### DILLMAN and others vs. HOFFMAN.

EASEMENTS: IMPLIED GRANT OR RESERVATION: COMMON HALLS, ETC., IN BUILDINGS. (1) *Implied grant, or reservation, of easements of necessity.* (2) *Easements not of necessity.* (3–6) *Common halls, etc., in buildings.* (3) Quære, *whether doctrine of easements of ·necessity applies.* (4) *When a mutual easement, if any.* (5) *How such mutual easement terminated.* (6) *Case stated.*

1. In every deed of a *part* of the grantor's land, without express provision on the subject, there is an implied grant, or reservation, of easements of necessity for the enjoyment of the part conveyed, or of the part retained.

[2. The present state of the law as to implied grants, or reservations, of easements other than those of necessity, considered per RYAN, C. J.]

3. Whether, where the owner of a permanent building conveys part of the same, dependent, for access to its upper stories, on common stairs, passages and halls, the doctrine of easements in ways of necessity applies, or whether the conveyance of a part determines the common use of such stairs, passages and halls, is not here decided.

4. If an easement exists in such a case, common stairs, passages and halls which are in part upon the estate of each party, constitute together one entire *mutual* easement; and neither party can insist upon such an easement in the estate of the other, and at the same time obstruct the easement *in invitum* on his own estate.

5. In such a case, an adverse permanent exclusion of one party by the

other upon the estate of the latter, will, at the election of the former, operate as an extinguishment of the mutual easement by the latter.

6. A permanent business block, of several stories, in a city, was so built that the only access to the stories above the ground floor was by certain stairways and passages and a hall; and the north one-third and south two-thirds were afterwards conveyed to different grantees, and are now held in severalty by the parties to this action, the line of division being within said hall and one of said stairways. Plaintiff's grantor, while seized of the north one-third, several years before this action was brought, built, without defendant's consent, a permanent partition, ever since maintained, inclosing within his own premises a great part of the common hall and passages in the upper stories upon his own estate, and removed a stairway between the second and third stories, part of the common way, from his own premises to those of defendant, leaving a common way, but not the same, nor one so advantageous to the defendant. The action being to restrain defendant from obstructing the stairways and hall by building a partition wall on the line of division between the two estates: *Held*, that the mutual easement, if there was one, has been extinguished by plaintiff's obstruction thereof, now ratified by defendant.

APPEAL from the County Court of *Milwaukee* County.

In 1849, James Kneeland was the owner in fee simple of the whole of a certain lot in the city of Milwaukee, on the west side of East Water street, having a front of sixty feet on that street, and running back about a hundred feet to the Milwaukee river. In that year he erected a building on said lot, covering the whole width thereof; the lower story containing three stores fronting on East Water street, of about equal size. Between the north and middle stores was constructed a stairway about five feet wide, leading from the sidewalk up to the second story of the building; about one-third of which stairway was north, and two-thirds south, of the division line between said two stores. In the second story of the building was a hall about forty feet long from north to south, and twenty feet wide; the north end of which was bounded by the north wall of the building. From this hall doors opened into offices on the east, west and south sides thereof. The landing of the front stairway already described was in this hall; and

immediately opposite this landing, on the west side of the hall, was a rear stairway, leading down from the hall by one flight to a landing on the main floor, and thence by another flight to the ground in the rear of the building, and being on both sides of the division line between the north and middle stores. A small office over the front stairway connected the offices on the east side of the hall, which would otherwise have been separated by the width of said stairway ; and a like office óver the rear stairway made a similar connection between the other offices on the western side of the hall. The hall and offices occupied the whole of the second story. The hall was open to the roof, and lighted by a sky-light; but over the offices of the second story were similar ones in the third story, which were entered from a gallery running around the east, west and south sides of the hall ; and this gallery was reached by a stairway in the north end of the hall, which led up several steps to the north wall, and then divided and led up east and west to said gallery. Said hall was built by Kneeland for the common benefit and accommodation of the occupants of the second and third stories of the whole building.

On the 1st of August, 1855, Kneeland conveyed the south forty feet of said lot to one Berliner, and the deed was recorded the next day. On the 25th of the same month he conveyed the north twenty feet of said lot, with the appurtenances, to Charles Geisberg. Both conveyances were by warranty deed, with full covenants, including a covenant that the premises conveyed were free of all incumbrances. By subsequent conveyances, *Dillman*, one of the plaintiffs in this action, succeeded to the rights of Geisberg, and *Hoffman*, the defendant, to those of Berliner. The plaintiffs *Mendelson* and *Rukeyser* were tenants of *Dillman*, when this action was commenced, and occupied the second and third stories of *Dillman's* part of the building for manufacturing men's caps.

The building erected by Kneeland was about sixty feet deep, and during Kneeland's ownership the rear yard was used

in common by all the occupants of said building; and the neces-
sary offices in the yard were all located on the north one-third.
After Kneeland sold, the owners of that third and of the south
two-thirds, respectively, extended their stores to the rear from
time to time, the first extension being of the south two-thirds.
In this way the occupants of the south two-thirds were cut off
from access to the yard offices located upon the north one-
third; but Geisberg, while holding title to the north one-third,
paid the defendant for the lumber necessary to erect similar con-
veniences on the south two-thirds.   From the erection of the
building to the commencement of the action, a period of over
twenty years, the front stairway had been constantly used by
the owners and occupants of the second and third stories, and
by all persons going there; and this use had been open, noto-
rious and unobstructed.   During the same period, the hall in
the second story, except for the encroachments hereinafter
stated, had been used in common by the owners and occupants
of said building.   In December, 1865, and January, 1866, or
some weeks later, Geisberg inclosed the north part of the hall
by a partition wall, reaching from the north line of the front
stairway west, and parallel to the north wall of the building.  This
partition extended upward from the floor to the ceiling of the
hall, and cut off access to the third story by means of the stair-
way in the north end of the hall, above described; but, during
the progress of the work, Geisberg took down said stairway
and placed it "at the south end of the hall, over the middle
store, connecting it with the gallery, so as to give access to the
upper rooms" [in the third story].*  Geisberg at the same

---

* The evidence for the plaintiff, including the testimony of the carpen-
ter by whom the work was done, and who produced his account books,
giving the dates of work which he stated to be the work in question, tend-
ed to show that the building of this partition and removal of the stairway
was begun December 19, 1865, and completed January 23, 1866; and that
the stairway was in its new position, and in a passable condition, within
two or three days after the former date. The court found in accordance
with this testimony.  The evidence for defendant, however, tended to show

time constructed a stairway over his own store, from the second to the third stories, for his private use. The object of this alteration was to convert the whole second and third stories in the north twenty feet (except the strip between said. partition and the division line) into a book bindery.

Within a year before the commencement of this action, and while Geisberg owned the north twenty feet, the defendant erected a partition on the division line, in the rear stairway, and in the hall, nearly to the front stairway; and he threatened to extend this partition to and through said front stairway, along said division line, to the front sidewalk. *Dillman*, having in the meantime acquired Geisberg's title to 'the north twenty feet, brought this action to maintain his right to the free and unimpeded use of the stairways, and the passages through said hall between the same, and to enjoin the defendant from obstructing them.

The answer, among other things, denied that the stairways and passages in question were necessary to the use and enjoyment of plaintiff's property; alleged that plaintiff and his grantors had first excluded the owners of the south forty feet from all beneficial use of the ways and other conveniences on the north twenty feet, which had previously been used in common; and denied plaintiff's right to the relief sought.

The court included in its finding of facts nearly all those above stated. It also made the following additional findings as to matters of fact; and to these exceptions were taken: 1. That the front and rear stairways above described "have been, since their construction in 1849, the only means of access to the second and third stories of the building, except that Geisberg for about a year had a temporary stairway in the north store leading to the second story, which was found insufficient and

that the stairway was not removed until several weeks after he became owner of the middle twenty feet, and that he objected to such removal as an injury to his premises. His deed of that part of the premises bears date January 27, 1866.

was removed." 2. That the front stairway had been and was "the only access to the second and third stories of said building, particularly to that part of it owned and occupied by the plaintiffs, except as aforesaid." 3. That since the time when Geisberg erected a stairway in the hall over the middle store, reaching from the second floor to the gallery in the third floor, as above described, "that stairway has been constantly, openly and notoriously used as the only access to the third story. No objection was at any time made to this alteration by any owner of the premises. The alteration was made with the assent of the said Berliner, or one Bruno, or both; but it is uncertain whether he [Berliner] or Bruno, or either, was the owner at the time of giving such assent. The entire work was completed by January 23, 1866." 4. That Geisberg objected to the construction of defendant's partition on the division line, while he owned the north twenty feet, and plaintiff had also objected since his purchase. 5. That plaintiff's premises would be necessarily injured and their value impaired by the obstruction of the stairway as proposed by defendant; that said stairway, constituting the only access at present to the second and third stories of his building, would be reduced to a width of twenty inches, which would be wholly inadequate; and that *Dillman* and his tenants would thereby practically be shut out from a free and sufficient access to the upper stories of his building.

The court held that " when the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement or portion sold, with all the benefits and burdens which appear at the time of sale to belong to it as between it and the property which the vendor retains. This is not a rule for the benefit of purchasers only, but is entirely reciprocal. If, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it. The parties are pre-

sumed to contract with reference to the condition of the property at the time of sale; and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts." It further held that defendant took his tenements and premises above described subject to the right of all the occupants of the whole building, as erected by Kneeland, to use in common the stairways and the passages between them; and judgment was accordingly rendered affirming the right of plaintiffs to "the free, perpetual and unimpaired use of the stairways leading to the second and third stories of the building standing on said lot, and of the passage way in the second story leading from the front stairway to the rear stairway, being part of the hall of said building as it existed before it was obstructed by the defendant, and to access by such stairways and hall to the second and third stories of his said building;" and enjoining defendant, etc., from "injuring, obstructing or interfering with said stairways," etc.

The defendant appealed from the judgment.

*Jenkins, Elliott & Winkler*, for appellant, argued that defendant has all the rights of property which Kneeland conveyed to Berliner August 1, 1855, while plaintiffs have what Kneeland retained, and nothing more; and that, as the deed purported to convey the absolute title to the south forty feet of the grantor's premises free of all incumbrances "except existing leases," without the slightest reservation, the grantor could not thereafter claim to retain a valuable perpetual interest in the thing granted. Whether the rule in favor of the grantee, as to implied grants, stated in *Janes v. Jenkins*, 34 Md., 1 (6 Am. R., 300), can be sustained in its full breadth, is by no means clear. Many notable authorities give it a narrower scope, especially as applied to ways. *Barlow v. Rhodes*, 1 Crompt. & M., 439; *Worthington v. Gimson*, 2 E. & E., 618; *Whalley v. Tompson*, 1 Bos. & Pul., 371; *Thomson v. Waterlow*, L. R., 6 Eq. Cas., 36; *Langley v. Hammond*, L. R., 3 Exch.

161 ; *Daniel v. Anderson*, 31 L. J. (Chancery), 610 ; *Gayetty v. Bethune*, 14 Mass., 49 ; *Grant v. Chase*, 17 id., 443 ; *Manning v. Smith*, 6 Conn., 289. But if it can be sustained, it rests upon the principle that the vendor "can do nothing in derogation of his own grant." *Janes v. Jenkins, supra.* Upon this ground it was held at an early day, that "if the builder of a house sells the house with the land and appurtenances, he cannot build upon the remainder of the ground so near as to stop the lights of the house ; and as he cannot do it, so neither can his grantee. But if he had sold the vacant piece of ground and kept the house without reserving the benefit of the lights, the vendee might build against his house." Per HOLT, C. J., in *Tenant v. Goldwin*, 2 Ld. Ray., 1089. See also *Pulmer v. Fletcher*, 1 Lev., 122. This is undoubted law in England at the present day. *White v. Bass*, 7 H. & N., 722. To the same effect are the following American authorities : *Maynard v. Esher*, 17 Pa. St., 222 ; *Burr v. Mills*, 21 Wend., 290 ; *Hathorn v. Stinson*, 10 Me., 224 ; *Preble v. Reed*, 17 id., 169 ; *Brakeley v. Sharp*, 2 Stockt., 206, and 1 id., 9 ; *Johnson v. Jordan*, 2 Met., 234 ; *Collier v. Pierce*, 7 Gray, 18 ; *Carbrey v. Willis*, 7 Allen, 369 ; *Randall v. McLaughlin*, 10 id., 366. The only *decision* in conflict with these views is *Pyer v. Carter*, 1 H. & N., 916. This has been expressly repudiated by the highest British authorities, and the tendency of the latest cases is in the opposite direction. In *Ewart v. Cochrane*, 4 McQueen, 117, and *Hall v. Lund*, 1 H. & Colt., 681, no question of an "implied *reservation*," was presented. In principle *White v. Bass, supra*, decided five years later by the same court, is the very opposite of *Pyer v. Carter.* In *Dodd v. Burchell*, 1 H. & Colt., 121, it was attempted to apply the analogy of that case to a right of way. Here there was a claim of an implied reservation ; and there was no doubt that the way claimed had been constantly used with the part retained, during the unity of possession, and was made apparent by doors, and remained in use ten years after the defendant's purchase. But the court decided in favor of defend-

ant's right to block it up, refusing to follow *Pyer v. Carter*. In *Suffield v. Brown*, 10 Jur. (N. S.), 111, Lord Chancellor WESTBURY emphatically repudiated *Pyer v. Carter*. The case of *Crossley v. Lightowler*, L. R., 3 Eq., 279 (opinion of V. C. WOOD), and L. R., 2 Ch. Ap., 478 (opinion of Lord Chancellor CHELMSFORD), is to the same effect. See also *Russell v. Harford*, L. R., 2 Eq., 507. In *Carbrey v. Willis*, and *Randall v. McLaughlin*, *supra*, *Pyer v. Carter* was also repudiated. *Butterworth v. Crawford*, 47 N. Y., 349, although not decisive of the point here involved, also questions it. Counsel further cited *Clark v. Cogge*, Cro. Jac., 170; *Staple v. Haydon*, 6 Mod., 1; *Chichester v. Lethbridge*, Willes, 72, note; *Dutton v. Taylor*, 2 Lutw., 1487; *Pinnington v. Galland*, 9 Exch., 1; *McTavish v. Carroll*, 7 Md., 352, as sustaining implied reservations only in "ways of necessity." The decision of the court below in the present case seems to have been based on *Lampman v. Milks*, 21 N. Y., 505. That case was rightly decided, but the remarks in the opinion about the rule of the decision being "entirely reciprocal," etc., are outside of the record and mere *dicta;* and, besides, it is expressly stated in that opinion (p. 516) that those *dicta* do not apply to rights of way. Counsel further contended that where there is a grant of lands by metes and bounds, without express reservation, and with full covenants of warranty, there is no implied reservation of any easement unless it be one *strictly of necessity* (*Carbrey v. Willis* and *Grant v. Chase*, *supra*; Washb. Eas., 31, 163–4); that there was no evidence in this case to show that *Dillman* could not easily construct a suitable and convenient stairway to his second story over his own premises, and nothing, therefore, to show that the ways to which a right was here claimed were of necessity (*Huttemeier v. Albro*, 2 Bosw., 546); and that the whole doctrine of implied easements should be received with great caution in this country, because it stands in the way of improvements. 2. If the arrangements made by Kneeland, while owner of the whole

property, for its beneficial use, became mutual rights between the different owners upon a severance, then defendant's right to the original hall in the second story, the gallery in the third, and the stairway at the extreme north end of the hall, cannot be disputed. He has not lost his rights by nonuser, nor by the encroachments of the plaintiffs, there having been no adverse occupation for twenty years. Washb. Eas., 551, 556. Plaintiffs' suit should not be granted, therefore, except upon condition that they restore the premises to their original state. 3. If a right of way was reserved, it was only for the use of the *offices* in the building. It led to an open space, upon which these opened. The plaintiffs' grantor lost this right of way by destroying the offices inclosing the open space, and converting the whole into a manufacturing establishment. The light use to which an office and the way to it can be put, is wholly different from the carrying of raw material and bulky merchandise up and down. "A way to a cottage ceases, if the cottage be changed into a tan-yard." Washb. Eas., 183; *Allan v. Gomme,* 11 Ad. & El., 759; *Henning v. Burnet,* 8 Exch., 187; *Valley Falls Co. v. Dolan,* 9 R. I., 489.

*Smith & Stark,* for respondents, argued that, the building having been originally so constructed that the ways in question are essential to the due use of every part of it, which fact is visible on simple inspection, a conveyance of either of the portions which contain offices must transfer the right of way, and a conveyance of either of the portions in which the ways lie must be subject to the right of way. From the structure of the building itself, no one could doubt that when Kneeland conveyed to Berliner, he meant to give, and did give, the right of passage over the stairway and hall, so far as he retained ownership, or that he retained a similar right of passage over the piece conveyed. It was manifest to the eye that the property could not be otherwise enjoyed by either party. The deed was given and accepted with a common understanding. This is further evidenced by the subsequent conduct of the parties

and their privies in estate, who constantly enjoyed the rights thus acquired, for eighteen years, without a word of dissent on either side. This course of action furnishes a clear and certain key to the intentions of the parties. The common stairway, the common hall, the common exit to the rear, could mean but one thing; they signified a common use, and therefore a joint right of common use. If, under these circumstances, the way had been exclusively over the soil of one of these purchasers, the title of the other to the easement would still be clear. But the way is over the soil of each of the owners. The plaintiffs and their grantor have furnished passage to the defendant and his grantors, and have received it from the latter. The latter, having enjoyed the benefits as well as borne the burden, are estopped to deny their title or ours. Nothing is wanting to the equity of our claim, as well as nothing to the certainty of our right. In support of these views counsel cited *Lampman v. Milks*, 21 N. Y., 505, and the cases there referred to: *Partridge v. Gilbert*, 15 N. Y., 601, 606 et seq.; *Brooks v. Curtis*, 50 id., 639; *Rogers v. Sinsheimer*, id., 646, and cases cited; *Huttemeier v. Albro*, 2 Bosw., 546; *S. C.*, 18 N. Y., 48; *Webster v. Stevens*, 5 Duer, 553; *Eno v. Del Vecchio*, 4 id., 53; *Roberts v. Roberts*, 55 N. Y., 275; Gale & W. on Eas., 49, 52; 2 Washb. R. P., 288 et seq; Washb. Eas., 23 et seq., 42, 454–5; 3 Kent, 436–7; *Durel v. Boisblanc*, 1 La. An., 407; *Lavillebeure v. Cosgrove*, 13 id., 323; *Gillis v. Nelson*, 16 id., 275; *McTavish v. Carroll*, 7 Md., 352; *Janes v. Jenkins*, 34 id., 1; *Elliott v. Rhett*, 5 Rich. (S. C.), 405, 415, 419; 6 Alb. L. J., 234; *Morrison v. King*, 62 Ill., 30; 16 id., 217; *Mandeville v. Comstock*, 9 Mich., 536; *Thompson v. Miner*, 30 Iowa, 386; *Seymour v. Lewis*, 2 Beasley, 439, 442, 444; *Denton v. Leddell*, 23 N. J. Eq., 64; *Kenyon v. Nichols*, 1 R. I., 411, 417; 9 id., 564; *Harwood v. Benton*, 32 Vt., 724; *Kieffer v. Imhoff*, 26 Pa. St., 438; *Phillips v. Phillips*, 48 id., 178; *R. R. Co. v. Jones*, 50 id., 418; *Overdeer v. Updegraff*, 69 id., 110, 119; *Cannon v. Boyd*, 73 id., 179; *Pyer v. Carter*, 1 H. & N., 916; *Solomon v. Vintners' Co.*, 4 id., 598; *Richards v.*

*Rose*, 9 Exch., 218; *Pinnington v. Galland*, id., 1; *Riviere v. Bower*, Ryan & M., 24 (21 E. C. L., 373); *Ewart v. Cochrane*, 4 Macqueen, 117; *Morland v. Cook*, L. R., 6 Eq. Cas., 252; *Davis v. Lear*, 7 id., 427; *Watts v. Kelson*, L. R., 6 Ch. App., 166, 170. The principle is fully recognized and upheld by this court in *Kutz v. McCune*, 22 Wis., 630. The covenant of warranty in Kneeland's conveyance to Berliner does not negative the presumption that plaintiff's right of way was intended to be reserved, the easement not being a breach of the covenant. *Kutz v. McCune, supra; Hendricks v. Stark*, 37 N. Y., 106; *Pettee v. Hawes*, 13 Pick., 323; *Cary v. Daniels*, 8 Met., 466; *Prescott v. Williams*, 5 id., 429; *Dunklee v. R. R. Co.*, 4 Foster, 489; *Griswold v. Allen*, 22 Conn., 89. It is immaterial which of the two conveyances made by Kneeland was prior in time. *Randall v. Silverthorn*, 4 Pa. St., 173; *Seibert v. Levan*, 8 id., 383; *Partridge v. Gilbert*, 15 N. Y., 601; 1 Coms., 103, and cases there cited; 5 Duer, 553; 6 id., 17; *Ferguson v. Witsell*, 5 Rich., 280; 9 Exch., 1; id., 218. *French v. Carhart*, 1 Coms., 96, 102, illustrates the principle that the situation of the granted premises is to be considered in construing the conveyance, and that acts done under it are to be considered by the court. See also *Morgan v. Mason*, 20 Ohio, 401; *Wright v. Day*, 33 Wis., 260, 266. 2. Counsel contended, upon the evidence, that the way in question was one *of necessity;* that when Kneeland conveyed the south forty feet, he impliedly granted a right of way to the offices therein, including a right to reach the third story by the stairway in the hall, which was wholly on his own premises (30 Iowa, 386, 390; L. R., 7 Eq. Cas., 431; 62 Ill., 30); and that if he gave these rights on the ground of necessity, he on the same ground reserved a like right of entrance to his own building. The necessity required to constitute such a way need not be an insuperable physical necessity, but it is enough that it would involve unreasonable labor and expense to open another way. *Pettingill v. Porter*, 8 Allen, 1, 6. This case is even stronger than those which de-

clare that the physical characteristics artificially impressed upon two properties by the common owner, constituting a burden on one for the benefit of the other, shall be perpetual after a sale to different purchasers. Here the stairways are constructed with the building sold, and are from the beginning a necessary part of the thing granted — an essential constituent, as much as the windows or chimneys. To destroy these ways is to destroy the identity of the thing granted, *rem ipsam;* to convert the principal subject of the grant into a new, and, for the plaintiffs, a much inferior structure. 3. As by the statute of limitations a title may be acquired to lands, so by prescription for the same length of time, title to an incorporeal hereditament may be acquired. 2 Washb. R. P., 277, 293, and note, 296, 297, 304; 3 id., 52; Washb. Eas., ch. I, sec. 4, pl. 1, 7, 24, 26–28, 30, 31; *Haag v. Delorme,* 30 Wis., 591. Our statute prescribes a ten years limitation where the right exercised is claimed "under a written instrument *as being a conveyance*" thereof. 2 Tay. Stats., 1622, § 6. The deed from Kneeland to Geisberg included appurtenances, and was broad enough to include the easement now claimed, if Kneeland had then owned it. The grantee immediately entered upon the enjoyment of that easement, claiming the right under his deed, and enjoyed it without interruption for eighteen years. His title by prescription is perfect, even if his deed gave him none. *North v. Hammer,* 34 Wis., 425; *Stevens v. Brooks,* 24 id., 326, 330. 4. As to the change of the stairway in the hall, etc., by *Dillman's* grantor, counsel contended that this was done by consent, or at least without objection from the owners, and had been acquiesced in for nearly ten years; but if these acts were violations of defendant's rights, they only furnish him so many causes of action. They were at most trespasses of Geisberg, for which he might have been sued, but do not defeat his title to his real estate, corporeal or incorporeal. 15 N. Y., 608, 609. 5. The right to use the common ways was not lost when the offices in the north twenty feet were converted into a bookbindery or

cap-maker's rooms. The object of the ways was to afford ac-·
cess to the upper stories, however they might be used. It
might as well be said that no dentist could be allowed to go
there because only lawyers had offices there at the time of
Kneeland's conveyance. The objection is an after-thought,
made twelve years after the change in the use of the rooms in
the upper stories, and must be regarded as frivolous. *R. R. Co.
v. Jones*, 50 Pa. St., 417. 6. Counsel also argued that the doc-
trine here contended for is entirely applicable to crowded and
growing cities, and is so applied in many of the cases cited;
and that instead of preventing improvements, it tends to facil-
tate them by encouraging devices for economizing space.

RYAN, C. J. There is in numerous cases much discussion
of the main question argued on this appeal, and not a little di-
versity of decision. The question is very interesting, and was
thoroughly investigated and intelligently presented by counsel
on both sides.

When one part of an estate is dependent of necessity for en-
joyment on some use, in the nature of an easement, in another
part, and the owner conveys either part, without express pro-
vision on the subject, all the authorities agree that the part so
dependent, thence called the dominant estate, carries or reserves
with it an easement of such necessary use in the other part,
thence called the servient estate. The rule goes upon the max-
im, *quando aliquis aliquid concedit, concedere videtur et id sine quo
res concessa uti non potest*, held to be bad Latin but good law.
*Pinnington v. Galland*, 9 Exch., 1.* But the rule has long
been applied to implied reservations as well as to implied grants.
*Clark v. Cogge*, Croke Jac., 170.

When the part conveyed is the dominant estate, later author-
ities generally go beyond easements of necessity; many hold-
ing that grantees take implied easements of whatever uses had

---

* The maxim is generally given, in perhaps no better Latin, as found in
*Liford's Case*, 11 Coke's R., 46 b.

been apparently and continuously made of the servient estate, for the convenient and beneficial enjoyment of the dominant estate. Some cases cited by the appellant show, however, that this rule is not always recognized in its broad sense. *Gayetty v. Bethune*, 14 Mass., 49; *Grant v. Chase*, 17 id., 443; *Manning v. Smith*, 6 Conn., 289; *Barlow v. Rhodes*, 1 Crompt. & M., 439; *Worthington v. Gimson*, 2 Ell. & E., 618; *Langley v. Hammond*, L. R., 3 Exch., 161; *Thomson v. Waterlow*, L. R., 6 Eq. Cas., 36.

When the part conveyed is the servient estate, there is great conflict of authority ever since *Pyer v. Carter*, 1 H. & N., 916; some cases holding implied reservations as extensive as the implied grants upon conveyance of the dominant estate; others adhering to the earlier rule, that grantors can claim nothing in derogation of their grants, beyond easements of necessity. *Tenant v. Goldwin*, 2 Ld. Raymond, 1089.

Since *Pyer v. Carter*, cases have multiplied on the point, *pro* and *con.* The question is new here; for it is not passed upon in *Mabie v. Matteson*, 17 Wis., 1, or any other case within our recollection in this court. And when we find occasion to pass upon it, there is ample authority in the books to sustain us in adopting a rule according to our own impression of reason and justice.

We may say, however, in passing, that it is always safest to let written contracts speak for themselves. This rule is often relaxed with doubtful expediency. Parties ought to make their own contracts complete. Alienations of land are, or ought to be, grave and deliberate transactions. Every conveyance should contain " the certainty of the thing granted " to the full extent of the grant. What may be expressed enlarging or restricting the grant in particular cases, should not be left to implication. It is often difficult, as the cases show, to determine what shall be implied in conveyances, by way of grant or reservation of easement: what parties, who might have spoken, shall be held to intend by their silence. And, because

"a deed shall be construed most strongly against the grantor," this view applies with great force against implied reservations in the servient estate conveyed by the owner of the dominant estate.   Indeed it is remarkable that the doctrine of implied grant of easement in the land of the grantor once rested very much on the principle that the grantor should not be heard to derogate from his grant (*Howton v. Freurson*, 8 T. R., 50); and yet the same doctrine has been extended to implied reservations to the grantor in what he conveys, in direct derogation from his grant.   On principle, therefore, we should be disinclined to enlarge or limit estates granted, by implication of law, further than a general current of decision might oblige us.

Such seems to be the policy of our legislation.   The common law implied covenants from some words used in conveyances. That is now forbidden by statute (R. S., ch. 86, secs. 5, 6); for the reason, we take it, that it is better to leave parties to express their covenants: a reason equally applicable to implied grants and reservations.

In new states like this, the uses of land and of structures on land are more variable with the growth of population and business, than in England or the older states; and it might tend to impede sale and improvement of real property, if old uses of soil or buildings should be too easily placed beyond the power of owners by easements implied by conveyances in their chains of title.

The whole doctrine was originally restricted to ways of necessity, because "It is *pro bono publico* that the land shall not be unoccupied."   *Dutton v. Taylor*, 2 Lutwyche, 1487.   And it may well be doubted whether it might not have been wiser to have always restricted both implied grants and implied reservations to easements of necessity; not perhaps of absolute, physical necessity, but of reasonable necessity, as distinguished from mere convenience.   *Carbrey v. Willis*, 7 Allen, 364; *Pettingill v. Porter*, 8 id., 1.

But we will not pursue the subject further.   We did not in-

tend to do more than mention the state of the authorities, and have been led to say so much by the interesting character of the question, professional and practical. In any view of the present case, the unanimous agreement of the authorities . in favor of the reservation to the dominant estate of an easement of necessity upon conveyance of the servient estate, is sufficient for the respondent, *Adam Dillman*.

For, if the doctrine be applicable to such a case, there seems to be no doubt that the common stairs, passages and halls of the building erected by Mr. Kneeland, and now owned in severalty by these parties under his conveyances, constitute a way of necessity to the respondent's part of the building on . the dominant estate, in part over the appellant's part on the servient estate.

In such a property, the present beneficial use is in the building. While it stands, the immediate use of the land is chiefly as a place for the building. When the building is of a permanent character, as here, the estate is commonly bought and sold chiefly in view of the uses of the building. When this building was put up, the stairs, passages and halls were made, not a convenience merely, but a necessity to the use of the whole building above the ground story. There was no other access to either part, the appellant's or the respondent's. When Kneeland conveyed, he made title in severalty to the building as it stood. It is true that either party might have so altered his part of the building as to have made internal access to the upper stories; but not without such change in the structure and use of his part as would make it virtually a different building.

But whether upon such a conveyance of part of a structure dependent for access above on common stairs, passages and halls, the doctrine of easements in ways of necessity applies, as held in *Thompson v. Miner*, 30 Iowa, 386; *Morrison v. King*, 62 Ill., 30, and perhaps other cases; or whether in such a case the conveyance of part should not be held to determine the

common use of stairs, passages and halls, — we need not, in our view of this case, determine.

For, granting the easement, each stair, passage and hall was not a separate easement, but together constituted one entire, mutual easement: parts of one common way. And the common stairs, passages and halls being in part upon the estate of each party, it appears very certain, upon principle and author-ity, that neither party could insist upon such an easement in the estate of the other, and at the same time obstruct the ease-ment *in invitum* on his own estate. Either party, relying for himself on a mutual easement, would be bound to concede it to the other; and an adverse, permanent exclusion of one by the other upon the estate of the latter, would, at the election of the former, operate as an extinguishment of the mutual ease-ment by the latter. Washburn on Eas., ch. 5, sec. 5, and the cases there cited, particularly *Corning v. Gould*, 16 Wend., 531. That case proceeds upon obstruction by one party of a mutual way, and appears to be directly applicable to the pres-ent case. See also *Partridge v. Gilbert*, 15 N. Y., 601; *Dyer v. Sanford*, 9 Met., 395.

The respondent's grantor, while seized, several years before this suit was brought, built a permanent partition, ever since maintained, inclosing within his own premises a great part of the common halls and passages in the upper stories upon his own estate, and removed a stairway between the second and third stories, part of the common way, from his own premises to those of the appellant. This worked a substantial change in the economy of the common way, and went far to relieve the respondent's premises from the burthen of the mutual easement which he claims. It is immaterial that this change left a common way. It did not leave the same common way, nor one apparently as advantageous to the appellant. And there can be no serious question that the change was an ob-struction of the common way established by Kneeland, within the rule stated, if it was made *in invitum*. The respondent,

however, claims that it was made by consent of the owners of both estates. We think that the evidence fails to establish such consent.

It is true that one witness testifies to the consent of Mr. Bruno, the appellant's grantor of part of his premises. But Bruno's consent, without the appellant's, would have been insufficient. And it is pretty evident that the witness made some mistake, either as to the person or to the time. He does not deny that the appellant did object. And the appellant himself, who was then seized of part and had apparently purchased the rest of his present premises, positively testifies to his objection to the change, made at the time and apparently not since relinquished. The evidence leaves us no room to doubt the fact.

What might then have been the rights or remedies of the appellant to maintain the common way, we need not now inquire. He had a right to insist on the extinguishment of the respondent, as he did and does. The mutual easement, if there were one, is now clearly extinguished by the permanent obstruction of the one party and the ratification of it by the other. The appellant's partial forbearance to enforce his right could not affect the right itself, until the new way should ripen into a way by prescription. And the respondent cannot have equitable interposition to enforce against the appellant a mutual way in both of their estates, from which in a great measure he excludes the appellant on the respondent's own estate.

Other questions were discussed at the bar, which, in this view of the case, it is unnecessary to decide.

*By the Court.*— The judgment of the court below is reversed, and the cause remanded with instructions to dismiss the complaint.