BENEDICT, Respondent, vs. BARLING and another, Appellants.

*April 9 — May 5, 1891.*

*Landlord and tenant: Way by necessity.*

Where the lessee of the first floor of an unfinished five-story building
knew, when he took the lease, that the upper stories were intended
to be used for mercantile purposes, and that the means to be pro-
vided for access thereto were a stairway and elevators from a hall in
such first story, *held*, that he took the lease subject to the right of
his lessor and his workmen and customers to use such hall, stairway
and elevators as ways by necessity to such upper stories, though
there was no express reservation in the lease, and that he cannot
claim any abatement of rent by reason of such use.

APPEAL from the Superior Court of *Milwaukee* County.
The case is sufficiently stated in the opinion.   The defend-
ants appeal from a judgment for plaintiff for the full amount
of rent claimed, with interest and costs.

For the appellants there was a brief by *Rose & Bell*, and oral argument by *D. S. Rose*.   To the point that the existence and character of a way by necessity depends upon the facts and circumstances in view of which both parties acted in making the lease, they cited *Lyman v. Babcock*, 40 Wis. 511; *Allen v. Lee*, 1 Ind. 58; *S. C.* 48 Am. Dec. 354; *London v. Riggs*, 37 Eng. Rep. 1; *S. C.* 13 Ch. Div. 798; Elphinstone, Interp. of Deeds, pp. 185–201; *Halligan v. Wade*, 21 Ill. 470; *S. C.* 74 Am. Dec. 108; 3 Taylor on Ev. 1198.   And the defendants had a right to show those facts. *Leland v. Stone*, 10 Mass. 459.   To the point that such way must be one of actual necessity, they cited 1 Wood, Landlord and Tenant, sec. 243, and cases there cited; Taylor, Landl. & T. sec. 214, and cases cited; *N. Y. L. Ins. & T. Co. v. Milnor*, 1 Barb. Ch. 354; *Pierce v. Selleck*, 18 Conn. 321; *Pearson v. Spencer*, 3 Best & S. 761; *Oliver v. Pittman*, 98 Mass. 50; *Hollenbach v. McDonald*, 112 id. 250; *McDonald v. Lindall*, 3 Rawle (Pa.), 492; *Dodd v. Burchell*, 1 H. & C. 113; *Hall v. McLeod*, 2 Met. (Ky.), 98; *Allen v. Kincaid*, 11 Me. 155; 2 Greenleaf's Cruise, Real Prop. 87, and cases cited.   Such a way must be limited by the necessity.   *Collins v. Prentice*, 15 Conn. 39; *S. C.* 38 Am. Dec. 61.   A partial eviction entitles defendants to a reduction of rent.   Taylor, Landl. & T. sec. 378; *Lewis v. Payn*, 4 Wend. 427.

. For the respondent there was a brief by *Miller, Noyes & Miller*, and oral argument by *B. K. Miller, Jr.*

Cole, C. J.   The plaintiff leased from the owner a five-story building with a basement, situated on the northwest corner of Grand avenue and Fourth street in the city of Milwaukee.   He sublet the first floor and a fourth part of the basement thereunder to the defendants for a term of one year from August 15, 1887, at an annual rental of $5,000, to be paid quarterly in advance, with a privilege

of a four-years lease upon the same terms and conditions. The building was in the course of erection when the defendants took the lease. The exterior walls were completed, but the interior was unfinished, except the floors were laid, and holes were cut showing where a stairway and elevators on the first floor were to be placed. This stairway, which was the only one designed or provided, was located on the first floor, on the west side of the room, about sixty feet from an entrance on the southwest corner of the building from Grand avenue. An elevator, called a passenger elevator, was located near the stairway, in a hall which extended from the entrance on the street to said stairway. Another elevator was erected near the northeast corner of the room, called a freight elevator, having an exit on Fourth street.

The defendants took possession of their part of the building, and used it for a clothing store and the sale of gents' furnishing goods. At the expiration of the first year they elected to continue the lease for the additional term of four years.

The plaintiff, in a few months after the defendants opened their store, by a tenant and by himself commenced to use and occupy the four upper stories for stores for manufacturing clothing and the jobbing trade, employing in their business at times 150 or 200 persons. The only way for the tenant or these workmen to get to the upper stories of the building was by means of the freight elevator or passenger elevator and the stairway on the west side of the first floor just mentioned. The freight elevator was used principally for getting goods up to or taking them down from the upper stories, the employees usually going up by the stairway or passenger elevator. For a few months after the plaintiff, or his tenant, Schultz, took possession of the upper stories occupied by them their employees reached these rooms by an entrance from Grand avenue and a door

through the library building adjoining on the west. A door was cut through the dividing wall of the library building, but this door was afterwards closed by direction of Mr. Plankinton, who owned both buildings, in consequence of increased insurance, or because objections were made by the underwriters to a door being at that place. This left the only mode of ingress or egress for passengers and freight to the upper stories by means of the elevators and stairway.

The defendants object to paying the full amount of rent named in the lease because, as they allege, the plaintiff, by his employees and agents, has used and occupied, since July 1, 1888, the greater portion of the first floor, in carrying through freight and merchandise, and the doors and entrances leading therefrom to the upper stories, thus greatly interfering with the use and enjoyment of their own premises. In other words, they claim there has been a partial eviction from the demised room.

We think it must be assumed from the established facts of the case that the defendants well knew, when they took the lease of the first floor, the means and conveniences which it was intended to provide for access to the upper stories. They knew very well that the upper stories were to be used and occupied for stores and trade of some kind. This fact cannot be, and is not, really disputed, in view of the knowledge they had of the general plan and arrangements of the building and the upper stories. Such being the case, that the stairway and elevators constituted a way by necessity to such upper stories is a proposition too clear to admit of doubt upon the evidence.

It is true, there was no reservation in the lease of the right to use these means of access to the upper stories, but, on reason and authority, such a reservation will be implied from the nature of the case and the situation of the property. "When one part of an estate is dependent of neces-

sity for enjoyment on some use in the nature of an easement in another part, and the owner conveys either part without express provision on the subject, all the authorities agree that the part so dependent, thence called the 'dominant estate,' carries or reserves with it an easement of such necessary use in the other part, thence called the 'servient estate.' . . . This rule has long been applied to implied reservations as well as to implied grants." RYAN, C. J., in *Dillman v. Hoffman*, 38 Wis. 559.

It seems to us very evident that the plaintiff was entitled to use the hall, the elevators and the stairway as ways to the upper stories of the building, and that such use, being reasonable under the circumstances, was necessary for the beneficial enjoyment of the premises retained by him. The jury found that those portions of the first floor as used by the plaintiff were ways of necessity, and it is plain that no other inference can possibly be made from the evidence when the situation of the property is considered. Nor does it appear that there was any serious objection to this use for a long time; the defendants apparently acquiescing in it. They certainly renewed their lease for four years, though they must have known at the time how the plaintiff had used these ways, and what right he claimed in respect to them on the first floor.

The law applicable to the facts is too well settled to need discussion. The result of the authorities on the subject is stated very clearly by the chief justice in *Dillman v. Hoffman*, and the rule of law was enforced by this court in *Jarstadt v. Smith*, 51 Wis. 96, and *Galloway v. Bonesteel*, 65 Wis. 80. It would be absurd to suppose that the plaintiff, when he leased the first floor, intended to deprive himself of the beneficial use of the other portions of the building which he retained, as he certainly would do if he had no right of way to the upper stories from the first floor.

The counsel for the defendants say the plaintiff might

have provided another mode of access to the upper stories at a reasonable expense, and thus have obviated the necessity of using the hall elevators and stairway on the first floor. But the plaintiff was not the owner of the building, and it is not to be presumed that Mr. Plankinton, who was the owner, would have consented to any material change or alteration in the building. The plans of the building were prepared by his architects, doubtless to meet his views of how the building should be constructed and arranged. And, as the building was arranged, it is clear that there was an actual necessity to use the ways from the first floor as a means of access to the upper stories. Whether any way or ways could be provided by the owner are questions we need not consider. It is sufficient to say that the facts bring the case fully within the principle applicable to the right of way by necessity over and from the first floor.

There was an attempt to show by parol evidence that the lease in question was made upon the understanding that the upper floors were to be used as and for "department stores;" and it is said that the way of necessity should be restricted to the use contemplated by the parties when the lease was executed, and could not be increased. It seems to us it would be impossible to tell, except by actual trial, whether the customers coming to and going from a department store would make less use of the elevators and stairway than was made by the plaintiff in the business to which he devoted the upper stories. Evidence upon such a fact or in regard to such a matter would at best be mere conjecture, an idle surmise. But the lease says nothing about a department store, though it does speak of a demise of the first floor and one fourth of the basement thereunder of the "new store building in course of erection." The learned trial judge instructed upon this point that the jury should disregard all testimony as to conversations between the parties previous to the execution of the lease which had to

do with the making of the lease, or as an inducement thereto, and to disregard all testimony as to what the rest of the building was to be used for, and to consider simply its adaptabilities, as it then appeared to the parties, for any business that was lawful in its nature; and the jury were instructed to disregard all testimony as to the conversations of the parties after the lease was executed and delivered, so far as they tended to contradict the lease or explain by parol the written instrument. The court had admitted some testimony in relation to having department stores in the upper part of the building, but it came to the conclusion that it was error to receive any such testimony in relation to the department stores. We do not think there was any error in this view of the case.

Other objections are taken to the charge, but we think the charge is quite as favorable to the defendants as the law of the case would allow. We discover no reversible error in the record, and the judgment of the superior court is affirmed.

*By the Court.*— Judgment affirmed.