HEMMY, Administrator, Respondent, vs. DUNN and another, imp., Appellants.

*May 2—June 23, 1905.*

*Adverse possession: Continuity of possession: Evidence.*

1. Where the claim of title to lands by adverse possession is that such title was acquired by actual continued occupation under a claim of title exclusive of any other right, and adverse to any other claimant, sec. 4213, Stats. 1898, limits such right of adverse possession to "the premises so actually occupied and no other."

2. In an action to establish title to land founded on a claim of twenty years' actual continued occupation under claim of title exclusive of any other right, the evidence, stated in the opinion, is *held* to show that the claimant's possession had been sufficiently interrupted before the running of the statutes of limitation to defeat the action.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Reversed.*

This action is brought by the administrator of the estate of Henry Dunn, who died intestate November 22, 1901, to quiet and establish title to the forty acres of land described. It is conceded in the complaint that one Edward Murray obtained the title to said land by deed dated October· 24, 1853, and that he died intestate August 27, 1856, leaving no issue nor

wife, him surviving, but leaving, him surviving, his mother, Ann Murray, his brother, James Murray, and his three sisters, Mary Dunn, Julia Brady, and Margaret Miles. The defendants claim title as heirs at law through their mother, Mary Dunn, who was also the mother of Henry Dunn. The plaintiff claims title by virtue of Henry Dunn being in the exclusive possession of the premises for more than twenty years immediately prior to his death. Issue being joined and trial had, the court found as matters of fact, in effect: (1) That the allegations of the complaint were all true. (2) That November 22, 1901, Henry Dunn died intestate. (3) That the plaintiff was appointed his administrator. (4) That Henry Dunn left no personal estate whatever to pay debts or funeral or other expenses. (5) That the value of the other real estate left by Henry Dunn does not exceed $2,000, and the same is heavily incumbered by mortgage. (6) That Henry Dunn's interest in such other real estate, if sold alone, is not sufficient to pay his debts and funeral and other expenses. (7) That, to realize money sufficient to pay such debts and expenses, it is necessary that the title to the forty acres of land in question be adjudged to have been absolutely in Henry Dunn at the time of his death. (8) That at the time of his death he was in sole and exclusive possession and occupancy of that forty acres of land and the whole thereof, and claimed the exclusive title to the same. (9) That, for a period of more than twenty years immediately preceding his death, Henry Dunn was in the continuous, actual, visible, open, notorious, and exclusive possession of the said forty acres of land, and the whole thereof. (10) That October 1, 1881, one Hemling was the tenant of the said Henry Dunn, and went into the occupancy of the premises described, and from that date until the death of Henry Dunn the same was in the exclusive occupancy and possession of Henry Dunn, either personally or by his tenant. (11) That at the time of his death, November 22, 1901, Henry Dunn was the

owner of the forty acres of land described, the title having been conferred upon him by adverse and continuous possession for more than twenty years. (12) That the infant defendants, through their duly appointed guardian *ad litem,* disclaim any claim or right in the said premises.

And as conclusions of law the court found, in effect, that November 22, 1901, Henry Dunn was the owner and in possession of the said forty acres of land, and had been continuously in the actual, visible, open, notorious, and exclusive possession of the same for more than twenty years immediately preceding his death, and directed judgment that the title to the said real estate be declared in the said Henry Dunn at the time of his death, with provisions as to costs. Thereupon judgment was entered in accordance with such findings, barring the defendants and each of them from any right or title to the forty acres of land described adverse to the said Henry Dunn, and of any claim or interest therein, except such as some of them may have as heirs at law of Henry Dunn, deceased, and for costs as therein stated. From that judgment and the whole thereof the defendants *William* and *John Dunn* appeal.

*M. E. Burke,* for the appellants.

*M. L. Lueck,* for the respondent.

CASSODAY, C. J. There is no claim or pretense that the plaintiff's intestate ever acquired any right, title, or interest in the land in question by virtue of or "founded upon any written instrument or any judgment or decree" of any court. On the contrary, the claim is that he acquired such title by "an actual, continued occupation of" such "premises under a claim of title, exclusive of any other right," and adversely to any other claimant. Sec. 4213, Stats. 1898. That statute limits such right of adverse possession to "the premises so actually occupied, and no other." Id. And then, after defining such adverse possession (sec. 4214, Stats. 1898), the

statute declares that "an adverse possession of . . . twenty
years under the two last preceding sections shall constitute a
bar to an action for the recovery of such real estate so held
adversely or of the possession thereof." Sec. 4215. What
constitutes such adverse possession has frequently and re-
cently been declared by this court. *Illinois S. Co. v. Bilot,*
109 Wis. 418, 84 N. W. 855, 85 N. W. 402; *Batz v. Woer-
pel,* 113 Wis. 442, 89 N. W. 516; *Gilman v. Brown,* 115
Wis. 1, 91 N. W. 227; *Hatch v. Lusignan,* 117 Wis. 428,
94 N. W. 332; *Illinois S. Co. v. Jeka,* 123 Wis. 419, 101
N. W. 399. The forty acres of land in question were with-
out buildings. With the exception of three or four acres it
was low land—useful for hay and pasture purposes. On the
opposite side of the highway and diagonally across there were
fifty acres of land owned by Henry, and which he acquired
by deed from his mother in 1880, and his buildings were all
on the fifty acres. There is evidence tending to prove that
Henry Dunn rented the forty acres and the fifty acres to-
gether to the witness Hemling, who took possession under his
lease October 1, 1881, and continued such possession under
such lease five years, or until October 1, 1886. But the evi-
dence of such possession after October 1, 1886, is exceedingly
weak and unsatisfactory. It consisted in seeing Henry, sev-
eral years prior to the trial, fix the fences clear around the
pasture, and cutting hay and digging a ditch through the past-
ure on the forty. It also consisted in showing that from time
to time prior to October 1, 1889, the forty was worked by a
man by the name of Ferkle, and then by a man by the name
of Hahn, supposed to be tenants of Henry, and that Henry
paid the taxes. We assume, however, for the purposes of this
appeal, that Henry was in such adverse possession from Oc-
tober 1, 1881, to October 1, 1899, a period of eighteen years.
The plaintiff's witness Hafenstein testified to the effect that
the appellant *William Dunn* worked the forty for two years
before Henry died, and had cattle thereon each of those two

seasons.  The plaintiff's witness Youker, among other things, testified to the effect that the summer before Henry died, and for two years before he died, the appellant *William Dunn,* or his son, worked the forty, and that he thought he rented it of Henry, but did not profess to have any knowledge as to that.  The plaintiff's witness Davis, an attorney at law at Watertown, testified to the effect that some three months prior to Henry's death, and about August, 1901, he drew a lease from Henry to one Gruenwald of the ninety acres of land, including the forty in question, but that Gruenwald was unable to get possession, and brought suit against Henry for breach of covenants in the lease for renting land for which he had no title.  The defendant *William Dunn* and his two sons testified to the effect that in the fall of 1899 one of the sons rented the fifty-acre piece of his uncle Henry; that Henry then admitted that he did not own the forty acres in question; that *William Dunn* was in the exclusive possession of that forty, and that he and his sons worked and occupied the same during the seasons of 1900 and 1901 without paying any rent and without any lease or agreement to pay rent to Henry or any one; and that *William Dunn* paid the taxes on that forty during those two years.  It is, moreover, conceded that *William Dunn* was in possession at the time Henry died, and has been ever since.  We must hold that the findings of the court to the effect that Henry Dunn was in the exclusive possession of the forty acres of land in question for twenty years immediately preceding his death are against the clear preponderance of the evidence.  On the contrary it is practically undisputed that, during the two seasons immediately prior to his death, *William Dunn* was in such possession, and he and his son worked and occupied that forty.  The assumption that *William Dunn* was in such possession and occupancy under a lease from Henry Dunn is without foundation.  The twenty years from the time it is claimed by the plaintiff that Henry Dunn first entered into such possession—

October 1, 1881—did not expire until October 1, 1901, within the two months immediately preceding his death; and yet it sufficiently appears from the plaintiff's own witnesses that long prior to the two months the running of the statutes of limitation had for two seasons been interrupted.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint