Frank C. Schilling Company, Respondent, vs. Detry, Executrix, and others, Appellants.

*November 13—December 9, 1930.*

110

112

113

114

For the appellants there was a brief by *Evans & Merrill* of Green Bay, and oral argument by *Fred D. Merrill.*

For the respondent there was a brief by *Kittell, Jaseph, Young & Everson,* attorneys, and *Lynn D. Jaseph* of counsel, all of Green Bay, and oral argument by *Mr. Jaseph.*

NELSON, J. The defendants contend that the trial court erred in concluding that the blocking of the front of the strip of land for a period of at least a year and a half to two years by the construction and maintenance of the restaurant constituted an interruption of the defendants' adverse user which prevented them from obtaining an easement therein by prescription. Had Conley, who constructed the restaurant under agreement with Schader, a tenant of defendants, been the sole tenant of Schader or defendants and had not paid rent to Elmore upon his demand, a situation entirely different would exist. See *Hemmy v. Dunn,* 125 Wis. 275, 103 N. W. 1095. However, it is undisputed that almost immediately after the restaurant was constructed Elmore demanded and received rent from Conley, and this arrangement continued as long as the restaurant existed across the strip. During this time it is clearly undisputed that the de-

fendants and their tenants, apparently without protest, were compelled, in using the strip, to divert from the strip around the west end of the restaurant and over the railway right of way in order to obtain ingress and egress from or to the street. That this constituted a substantial and material interruption of the defendants' otherwise continuous user seems too plain for successful controversy. As was said by this court in *Illinois Steel Co. v. Budzisz*, 115 Wis. 68, 86, 90 N. W. 1019:

"If an owner of land be disseised thereof by another, so as to start a period of adverse possession in favor of the latter, any notorious entry thereon by such owner or his agent by his direction, for the purpose of dispossessing the adverse occupant, operates to interrupt the running of the statute. It terminates the period of adverse occupancy absolutely and for all purposes. The statute can be set running again only by a fresh disseisin, which will constitute merely the commencement of another period of twenty years, regardless of the length of time the interruption of the adverse occupancy continued. Anything that actually breaks the continuity of adverse possession of property renders it harmless as regards the title thereof, no matter what may subsequently occur. *Johnston v. Fitzgeorge*, 50 N. J. L. 470, 14 Atl. 762; *Bowen v. Guild*, 130 Mass. 121; Pingrey, Real Prop. § 1196. Actual entry upon property by the true owner, of a mere casual character or by stealth, is not sufficient to break the continuity of a disseisin of him, nor is a re-entry sufficient which is not known to the adverse occupant or characterized by acts from which knowledge on his part would reasonably be inferred."

We therefore conclude that the trial court was right in holding that the construction of the restaurant across the strip and the subsequent payment of rent to Elmore for at least a year and a half to two years was clearly an interruption of the running of the statute and a material and substantial break in their otherwise continuous user of the strip in dispute.

The defendants, however, contend with great earnestness that, regardless of whether they obtained an easement in this strip by prescription, they are nevertheless entitled to use the strip of land on the theory of "implied grant, implied covenant, or estoppel." We have given most careful consideration to the numerous authorities cited from other jurisdictions which are referred to in the text and notes of 19 Corp. Jur. p. 932, with the result that we feel impelled to hold that they are not in harmony with the law of this state.

The defendants' right to the strip of land cannot be sustained on the theory of "implied covenant" because implied covenants are expressly prohibited by statute. Sec. 235.02. Nor can their right to an easement in the strip of land be sustained on the theory of "implied grant" because it is the established law of this state "that the only methods known to the law by which one person may acquire an easement in the lands of another are by grant or prescription or, in case of a right of way, by necessity." *Fischer v. Laack,* 76 Wis. 313, 45 N. W. 104; *Wegner v. Erffmeyer,* 193 Wis. 212, 213 N. W. 472.

In the early case of *Dillman v. Hoffman,* 38 Wis. 559, 573–4, Mr. Chief Justice RYAN, in discussing, somewhat *obiter,* the state of the law then existing as to implied grants or reservations of easements, other than those of necessity, said:

"We may say, however, in passing, that it is always safest to let written contracts speak for themselves. This rule is often relaxed with doubtful expediency. Parties ought to make their own contracts complete. Alienations of land are, or ought to be, grave and deliberate transactions. Every conveyance should contain 'the certainty of the thing granted' to the full extent of the grant. What may be expressed enlarging or restricting the grant in particular cases, should not be left to implication. It is often difficult, as the

cases show, to determine what shall be implied in conveyances, by way of grant or reservation of easement; what parties, who might have spoken, shall be held to intend by their silence. . . . On principle, therefore, we should be disinclined to enlarge or limit estates granted, by implication of law, further than a general current of decision might oblige us. Such seems to be the policy of our legislation. The common law implied covenants from some words used in conveyances. This is now forbidden by statute (R. S. ch. 86, secs. 5, 6) ; for the reason, we take it, that it is better to leave parties to express their covenants: a reason equally applicable to implied grants and reservations."

The subject was again discussed by Mr. Justice Dodge in *Miller v. Hoeschler,* 126 Wis. 263, 105 N. W. 790, and the law of this state stated with considerable particularity. It was there said (p. 268) :

"It is so easy, in conveying a defined piece of land, to express either any limitation intended to be reserved over it, or to be conveyed with it over other land, that the necessity of raising any such grant or reservation by implication is hardly apparent."

Again, on page 269 :

"The subject received discussion, *somewhat obiter,* at the pen of Ryan, C. J., in *Dillman v. Hoffman,* 38 Wis. 559, where many of the foregoing considerations are mentioned, and doubt is suggested whether any enlargement of the doctrine of implied easement, beyond rights of way strictly necessary to the use of the dominant estate, is at all wise. Largely on authority of that case, necessary rights of way have been held implied in several cases. *Jarstadt v. Smith,* 51 Wis. 96, 8 N. W. 29; *Galloway v. Bonesteel,* 65 Wis. 79, 26 N. W. 262; *Johnson v. Borson,* 77 Wis. 593, 46 N. W. 815; *Benedict v. Barling,* 79 Wis. 551, 48 N. W. 670. With exception of that particular type, however, we find no instance where any other easement has been held implied in this state, but, on the contrary, denial of such rights as might well have found support, both in the words of the rule

above mentioned and in the decisions from other states above cited."

Again (p. 270) :

"We cannot avoid the conclusion that, even if in some extreme cases there must be any easement other than right of way implied from necessity, that necessity must be so clear and absolute that without the easement the grantee cannot in any reasonable sense be said to have acquired that which is expressly granted; such indeed as to render inconceivable that the parties could have dealt in the matter without both intending that the easement be conferred."

We are therefore forced to conclude that, in this state, the doctrine of implied grant cannot be successfully invoked in defendants' favor. Had the strip of land been dedicated by Elmore as an alley or had the strip of land been platted as an alley, a different conclusion might be permissible. Such, however, is not the fact as shown by the undisputed evidence. The language of the contract hereinbefore quoted does not justify the conclusion that the strip of land was dedicated as an alley. The strip of land was referred to in the contract as "a proposed alleyway twenty feet in width," and the language of the deed, "so that an alley might be established twenty feet in width," is to the same effect. It is undisputed that at the time of the sale in 1902 all of the property conveyed, as well as the twenty-foot strip not conveyed, was under water and there was no access to it except from the bridge or over the right of way of the railway company abutting the property on the west. With that situation in mind it can hardly be claimed that at that time the strip of land was dedicated as an alley. It was at no time platted as such.

As to the claimed estoppel, it is very apparent that such defense was not litigated. No estoppel was pleaded, and the only suggestion that it was at all considered must be based on a proposed conclusion of law submitted by the

defendants. It is exceedingly doubtful whether defendants may now, in this court, rely on such a defense. *Fluck v. Meiroff,* 192 Wis. 480, 213 N. W. 474. The only grounds on which the estoppel might be claimed as shown by the record is the fact that the defendants and their immediate ancestor, Alex Detry, filled in the twenty-foot strip so that it would be passable. What Elmore did or said with respect to the improving of his property in this manner does not appear. That he would offer no objection to such improvement seems too clear for argument; that the improvement of the twenty-foot strip by Detry and his sons greatly served the convenience of Detry cannot be doubted. Whether Elmore remained silent while such work was being done and thereby misled the defendants does not appear. If defendants' ancestor, Detry, was misled in any way, it was quite likely that it was by reason of his mistake in supposing that he had a right to the strip of land for alley purposes by virtue of his grant. For the reasons stated the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.