LAMB *vs.* COE.

The rule is not invariable, that a *crooked fence* will be regarded as a *boundary* fixed and acquiesced in by the owners of adjoining lands, although it has been continued for 30 years. If such fence divides but a small portion of the possessions; if there be a fence on the *true line* dividing another portion; if for nearly half the length of the line between the adjoining owners there be no fence or *actual occupation* on either side; and if there be *no 'agreement* to abide by the crooked fence as a boundary, the party deprived of his land by the crooked fence is not concluded from showing the true line, especially if after such lapse of time the other party, by his declarations and acts, admits that such fence is not a fixed and settled boundary.

THIS was an action of *ejectment,* tried at the Madison circuit in September, 1834, before the Hon. HIRAM DENIO, one of the circuit judges.

The parties are the owners of adjoining farms. The farm of the plaintiff lies to the *north* of the farm of the defendant. The length of line between the two lots is 206 rods. The cleared or improved land on the plaintiff's farm extends from its *southeast* corner, along the line between the two farms, 68½ rods, and the clearings or improvements on the defendant's farm extend from the same corner 111½ rods. Beyond this point to the western boundary of the two farms there is not any fence dividing the two farms, the land on the western end of the two farms remaining in woods, uncultivated. For the whole of the distance of 111½ rods there was, in 1831, a fence *on* and *near* the line between the two farms, which was built upwards of 30 years before the commencement of this suit, by the father of the defendant, who was the former owner of the south farm, and was continued by him and by the defendant, to whom he devised the farm, until shortly before the commencement of the suit. Improvements were made on the plaintiff's lot for the above distance of 68½ rods, down to

ALBANY,
Oct. 1836.

Lamb
v.
Coe.

the fence erected by the defendant's father, as early as 1809 or 1810. From the *south east* corner of the plaintiff's farm, the fence extending west for the distance of 30½ rods, is *on the true line* between the two farms ; at that point it diverges to the south, and for 38 rods further, the extent of the *clearings* on the plaintiff's lot west, the fence is crooked, varying from the true line from 10 to 23 feet. It then continues at about the same distance from the true line, 43 rods further, which is the extent of the defendant's *clearings* west. In 1831, the plaintiff proposed to the defendant to have the line between the two farms run by a surveyor, so that a straight fence might be built. The defendant acceded to the proposition. Surveys were made, and the *true line* between the farms was ascertained, but the plaintiff being dissatisfied with the result, forbade the defendant from placing the fence upon that line. The defendant, however, removed the fence from where it before had stood and placed it upon the true line, thus taking into his possession the land between the old fence and the true line, and for doing so this action was brought.

The counsel for the plaintiff requested the judge to charge the jury, that as the division fence between the two farms had been built by the father of the defendant, from whom the defendant had derived his title, upwards of thirty years before the commencement of this suit, and it had during all that time been acquiesced in as the true boundary line between the two farms, the defendant was estopped from setting up the *true line* according to the conveyances of the parties, and that the plaintiff had availed himself in season of the *locus penitentiæ* to retract the agreement for the establishing of a new line. The judge instructed the jury that the plaintiff having refused to ratify the surveys which had been made, was entitled to have the case considered in the same light as if he had not agreed to the running of a new line or to the altering the division line of the lots ; and the question, therefore, for them to determine was, whether the defendant was concluded by *acquiescence* in the line upon which the old fence stood. He remarked, that although a fence had existed for many years upon a portion of the line, yet, for about half of the whole distance across the lot, it had always been and still remained

ALBANY,
Oct. 1836.

Lamb
v.
Coe.

a forest, without any definite boundary; that where a fence existed, it was not on a continuous straight line, and so far from it that in some places the angle was so great as to be palpable to any one looking upon it; that from the east side of the lot, the fence for some distance had always been on the line now claimed by the defendant as the true line; that that portion of the fence did not correspond with the other portion of it claimed by the plaintiff as the line which had been acquiesced in; and that as there was no fence or practical location on the west end of the farms, he was of opinion that the fact of the existence of a fence for a portion of the intermediate distance ought not conclude the defendant, especially as the result would be to establish a crooked line between the two farms when the true line was confessedly a straight line. He further observed, that there was no evidence of an actual agreement to abide by the line contended for by the plaintiff, and that, on the contrary, the first that had been heard from the plaintiff respecting it, was an allegation that it was incorrect; that in his opinion the facts proved were not sufficient to establish a practical location, so as to conclude the defendant from showing the true division line between the farms; and that he had fully succeeded in showing it to be where he had placed the new fence; and if the jury concurred with him in opinion, they ought to find a verdict for the defendant. The plaintiff excepted to the charge, and the jury found a verdict for the defendant. The plaintiff asks for a new trial.

*P. Gridley*, for the plaintiff.

*J. A. Spencer*, for the defendant.

*By the Court*, NELSON, Ch. J. The only question in this case is, whether the defendant is concluded, by the practical location and occupation, from moving his fence and placing it upon the true boundary line between him and the plaintiff, under the facts and circumstances of the case.

The entire line between the two farms is about 206 rods in length; and beginning at the east line and tracing it west,

ALBANY,
Oct. 1836.

Lamb
v.
Coe.

the first 30 rods of fence are on the true line ; here the land is cleared on both sides ; the next 38 rods are also cleared on both sides : here the fence diverges from the true line and encroaches upon the land of the defendant ; it then continues 43 rods further along woods on the side of the plaintiff and clearings on the side of the defendant, and here the clearings terminate. The residue is in woods and uncultivated, and no fence between the two farms. The two extreme corners are well known, and it is conceded the true line is a straight one. There is no distinct boundary by marked trees in the woods. Most of the fence was built by the father of the defendant, which is on the erroneous bonndary, some 25 or 30 years ago ; and the plaintiff claims that this fence thus built and the occupation according to it, though confessedly erroneous, concludes the defendant. The circuit judge left the question to the jury, whether the erection of the fence and acquiescence in it as the boundary, was conclusive upon the defendant or not, under the circumstances—intimating at the same time his own opinion it was not.

The defendant has the paper title. As to the 43 rods where the old fence was bounded on the north by the wood land of the plaintiff, there seems to be no good reason forbidding the assertion of that title to the true line. The plaintiff having no permanent or visible occupation upon the opposite side over this line, it cannot with much force be said that the fence had been fixed upon by both parties as the boundary, nor that the defendant had acquiesced in an occupation of his land by the plaintiff for any length of time whatever. He had a right to leave a strip of woods between his fence and the line ; and even if it was left by mistake, as it probably was, he did not thereby lose his title to it, nor did the plaintiff acquire it. The only portion of the 206 rods, in respect to which it can be said with any plausibility that the defendant has acquiesced in a way to prelude his assertion of title to the true line, is the 38 rods : the rest of the distance is either occupied up to the true line, or in a manner not to prejudice the rights of the defendant. In the case of *Stuyvesant* v. *Dunham,* 9 *Johns.R.* 61, 11 *id.* 569, *S. C. in error,* this court refused to straighten a boundary line according to the courses in the deed ; but

*there* a fence had been built and maintained *the whole length of the line* by both parties for twenty-five years, and an occupation by the parties or those under whom they claimed during all that time : *here* but a little more than *one-sixth* of the line acquiesced in as a boundary on both sides is erroneous, and the plaintiff was the first to dispute it, and insist upon the correction.   True, he supposed the error was against him, but nevertheless his acts and declarations show that he did not believe either party concluded in the matter.   These 38 rods were cleared and fenced by the father of the defendant some years before the clearing by plaintiff on the opposite side, and a witness for the plaintiff probably gave the true reason why the fence was built crooked.   He supposed it was so made as being most convenient upon newly cleared lands among stumps and other impediments.   The adjoining land being covered with a forest, it was not considered very important to ascertain with precision the true line of the lot.   This was omitted till improvements were made on both sides.   In 1810 the plaintiff's farm was cleared up to the fence, and since that time, it may be said, it has been recognized and acquiesced in as a boundary.   Taking into consideration, however, the situation of the entire line, the trifling variation from the true line for this distance of 38 rods, together with the assertions of the plaintiff himself that it was not fixed and settled, I cannot say that the jury erred in finding that the defendant was not concluded, or the judge in so advising them.   It was fairly open to be settled according to the legal title of the parties, as evidenced by their deeds.   The jury might well say the old fence was not intended as a permanent boundary, but was originally built and subsequently maintained as matter of convenience, till the true line should be ascertained.

New trial denied.