AYERS, Respondent, vs. REIDEL, Appellant.

*January 14 — February 21, 1893.*

*Adverse possession: Boundaries: Acquiescence: Court and jury: Description of land.*

1. Possession, occupation, and improvement of land for a number of years with the knowledge of the true owner is not conclusive evidence of adverse possession, but may be explained and rebutted by proof of facts showing that the possession was permissive or provisional and without the intention in fact of claiming or acquiring title.

2. The questions in this case as to the character of defendant's possession of the strip of land in dispute (the legal title to which was in plaintiff), and whether a fence built by defendant had become a settled boundary by acquiescence therein for many years, are *held* to have been properly submitted to the jury.

3. The description of the land in a complaint in ejectment as a strip on the east side of a certain forty acre tract, "about five rods wide at the north end and about two rods wide at the south end, about thirty rods long, and being all that portion of said forty acre tract lying west of the east line thereof and east of a fence claimed by defendant to be a line fence, but which is from two to five rods west of the true east line of said premises, and which fence runs north and south,"— is *held* sufficient.

APPEAL from the Circuit Court for *Clark* County.
Ejectment for a strip of land, "part of the southeast

quarter of the northwest quarter of section number 10, on the east side thereof, about five rods wide at the north end and about two rods wide at the south end, about thirty rods long, and being all that portion of said forty-acre tract lying west of the east line thereof and east of a fence claimed by defendant to be a line fence, but which is from two to five rods west of the true east line of said premises, and which fence runs north and south." The defendant is the owner of the northeast quarter of said section, the southwest quarter thereof lying directly east of the plaintiff's said forty-acre tract; and he claimed title to the strip in question under a continued adverse possession for more than twenty years before the commencement of the action, during which he claimed to have occupied it under claim of title thereto. The plaintiff purchased his forty-acre tract in the fall of 1875, and it was in the main woodland, and was and has since been used for pasturage purposes. He resided on a forty-acre tract immediately south of it, and bought both tracts of one Brown, who had owned and occupied the premises for some years previously. At that time it was all forest there. When the defendant settled on his tract he commenced cultivating on the west side of the southwest quarter of the northeast quarter, immediately east of the southeast quarter of the northwest quarter, owned by the plaintiff; the first year making an opening of about five acres, which was increased from time to time the whole length of the forty. The defendant built a log fence in 1867 on the line between the parties. It was not built very straight along the forty, but diverged at the north end about ten rods to the west. It was not made all at once, but from time to time as the clearing was opened.

It appeared that it was a forest country, just being settled, and the land was somewhat uneven; that no survey had been made of the lands on this section since the public

Ayers vs. Reidel.

survey, until 1889, when it was surveyed at the request
and in the interest of the owners of the lands on said sec-
tion, all contributing to the expense.  It then appeared
that a strip of the land so opened and cleared by defend-
ant, varying in width from one to eight or ten rods, was
found to be on the lands of the plaintiff, and it has been
opened and cultivated by the defendant, and used and oc-
cupied by him for a period of about twenty-three years
before the action was commenced.  About the time the
plaintiff purchased his forty in question, the log fence was
destroyed by fire, and the defendant built a rail fence ex-
tending across the whole forty from north to south, the
plaintiff furnishing some trees to make rails of.  The
plaintiff and defendant talked about building that fence,
and the defendant said it was on the line.  Plaintiff sup-
posed that he built it for a line fence.  In respect to this
the plaintiff testified, in substance, "that the defendant
said it was the line, and that he said he did not know any-
thing about it.  The land had never been surveyed until
1889, when it was surveyed by one Stockwell.  That they
never had any idea where the land was until it was so sur-
veyed.  That he did not believe the claim of the defendant
as to its being the line.  That he made no objections to
the fence being built, but that they talked time and again
about having it surveyed, to know where the line was;"
but this was denied by defendant.  The defendant claimed
he had a starting point on the road where the quarter post
was, and that a surveyor, named Reddan, about sixteen or
eighteen years before the suit was commenced, made a sur-
vey of an east and west line through the center of the sec-
tion, for highway purposes, and put up a post, which it is
said he stated was the center of the section, but it did not
appear that he made any completed survey of any tract on
the section, and did not run any line north and south be-
tween the plaintiff's and defendant's lands.

The rail fence was not on a straight line, but turned to the westward in like manner as the log fence, and was further to the west than the log fence was. It was not continuous, but for a space of some eighty feet there was nothing except a pile of stone, six or eight feet wide, in lieu of the fence. This fence was not straight, but was irregular. The plaintiff's forty acres to the south had been cleared over across the line to the east about the same distance relatively that the defendant had cleared and fenced over on plaintiff's forty. It appeared that when Stockwell made his survey he succeeded in finding the quarter section stakes on each side of the section. There was no testimony to show what, if anything, had occurred between the defendant and Bowman, plaintiff's grantor, in regard to the premises, or whether he was aware that the defendant had cleared over the line. The defendant testified that " Bowman came to his house, and he went to Bowman's, and he did not say anything; never made any complaint in regard to the fence not being on the line." The rail fence was built in 1876. The defendant further testified that " during all the twenty-two years of his occupancy he supposed the land was his that he was cultivating and improving, and that no one ever claimed different until the trouble with *Mr. Ayers*, after the survey; that he believed in good faith that the strip in question was on his land; that he helped to pay for the Stockwell survey; that he claimed the land by virtue of his patent,"— and, being asked if he intended to claim any land except what was described in it, answered, " No, all that is mine." There was a conflict of testimony as to the width of the disputed strip. After the Stockwell survey was made in 1889 the plaintiff built a wire fence on the south half of the line between him and the defendant, and the defendant in a like manner built a wire fence, about ten rods in length, on the north end of the north half of the line. Before building

the wire fences the defendant proposed to the plaintiff that they should build a good fence; that they had better put up a good fence,— to which he responded, " 'I will build just as good a fence as you will.' He thought a five-wire fence would be sufficient, and we would not have any trouble with the cattle." The strip in dispute lies between said portions of wire fence, and is about thirty rods in length; and there is the same fence on the west side of it that was built in the spring of 1876, but in a dilapidated condition. The parties had an angry controversy with regard to the cutting of some grass by the plaintiff on the strip in question in the year 1889, after the survey, and a somewhat irritating lawsuit concerning it.

The defendant, at the close of the plaintiff's testimony, moved for a nonsuit, on the ground that the plaintiff had not established any title; that the strip of land claimed was not described with sufficient certainty; that the fence built fifteen years before was built by agreement between the parties, and they had practically settled where the line was, outside of any question as to adverse possession under the statute of limitations. But the court overruled the motion, holding that the question of agreement as to location of the fence was for the jury.

The court charged the jury that the plaintiff was entitled to recover the controverted strip of land, unless the defendant had succeeded in establishing his defense; "that the evidence established, without contradiction, the line surveyed by Stockwell to be the true line." As to the question of location of the fence and building it by agreement, the court charged "that the defendant did not claim any positive agreement, but that the plaintiff had acquiesced in his location of the line for a long number of years, and that the question was whether the evidence sustained the position that the plaintiff acquiesced for a long number of years in the establishment of the boundary line, or whether he

objected to it and insisted upon the establishment of it by a surveyor; that if he did rely and acquiesce in this location for fifteen years then he ought to be bound by it; and that if the evidence did not satisfy them that he had acquiesced during all these years then the jury would not give the effect of an agreement to that evidence." As to the defense of the statute of limitations the court said: " In order that it should give him a title, it must be true that he had been holding the land for twenty years or more adversely to the adjoining proprietor; and that depends in a measure upon what he thought in his own mind about it, and presents the question, What did he intend when he built that fence there? Did he intend to claim up to that fence absolutely, or did he intend that as a provisional line, to be verified thereafter when a surveyor found it, and to conform his line to that? If he intended to make his title absolute to the line his possession would be adverse. If he intended it only as provisional until the true line was definitely ascertained, or could be in the future, then his possession was not adverse. You are to determine from all the circumstances, and from all that has been shown in evidence, what his idea was at the time when he first entered upon this land and built this fence. He must have had the purpose to acquire the title to the land adversely as against the adjoining owner during at least twenty years, and it would make no difference, if he did not enter upon it with this intention, that he changed his mind afterwards, unless, after he had changed his mind and determined to hold adversely, he then held adversely the full twenty years. So that is all the question,— whether it was adverse. That depends upon the defendant's purpose, what the law calls the ' *quo animo*,' with which he entered,— whether it was to hold it adversely, or whether it was merely tentative or provisional, depending upon where the true line should be afterwards ascertained to be; that the burden of proof was on the defendant to satisfy

the jury that this line was located by agreement as explained, or the defendant has held the land for full twenty years adversely."

Plaintiff had a verdict for the strip claimed; and a motion for a new trial on the ground that the verdict was against the evidence and contrary to law, and for error of the court in its charge to the jury, was denied; and from the judgment entered on the verdict the defendant appealed.

The cause was submitted for the appellant on the brief of *R. J. MacBride,* and for the respondent on that of *James O'Neill.*

For the appellant it was contended, *inter alia,* that the boundary line had been settled by acquiescence.    *Warner v. Fountain,* 28 Wis. 405; *Hamilton v. West,* 63 Mo. 93; *Jackson v. VanCorlaer,* 11 Johns. 123.    The description of the land in the complaint and in the judgment is fatally defective.    *Orton v. Noonan,* 18 Wis. 447; *White v. Hapeman,* 43 Mich. 267.

· Counsel for the respondent cited *Pickett v. Nelson,* 79 Wis. 9; *Dhein v. Beuscher,* 83 id. 316; *Hartung v. Witte,* 59 id. 285; *Fairfield v. Barrette,* 73 id. 463.

PINNEY, J.    1. The circuit court properly ruled that the evidence established the line surveyed by Stockwell as the true line between the parties.    The only objection urged is that there was evidence before the jury of what is called the "Reddan Survey," which was materially different from the line as determined by Stockwell.    All the evidence concerning the Reddan survey was hearsay, and it does not appear that any record or plat was made of it, and he was not called to prove it or to show how or in what manner he determined, if at all, the center of the section.    He did not make any survey of the line in dispute, nor does it appear that he made a survey of any tract in the section, but whatever he did was in relation to surveying a road for the town.

2. It is contended that the court erred in refusing to direct a verdict for the defendant — first, on the ground that the undisputed evidence showed that the defendant had held continuous and adverse possession of the premises under claim of title for more than twenty years before the commencement of the action; and, second, that it conclusively appeared that the boundary line in question had been settled by acquiescence more than fifteen years before the action was brought. What constitutes adverse possession is for the court to determine, but the facts which establish it are for the jury, and the question of the character of the possession is generally submitted to them. *Gross v. Welwood,* 90 N. Y. 638. It was for the jury to say what was the real character of the defendant's possession of the strip in dispute, and whether it was taken and maintained with an intention by the defendant to oust the true owner,— whether it was adverse to him in fact. To constitute adverse possession there must be the fact of possession and the hostile intention,— the intention to usurp possession; and, if there be possession of land by one not the true owner, the presumption of law is that such possession is in accord or amity with, and in subservience to, the true title and legal possession of the owner. *Dhein v. Beuscher,* 83 Wis. 316; *Schwallback v. C., M. & St. P. R. Co.* 69 Wis. 298; *Hacker v. Horlemus,* 74 Wis. 21; *Harvey v. Tyler,* 2 Wall. 349. The whole inquiry is reduced to the fact of entering, and the *intention* to usurp possession. *Probst v. Trustees,* 129 U. S. 191, 192. Permissive possession is never a basis for the statute of limitations, and the rule is that evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner, and that the defendant entered under his conveyance, and that his possession is only co-extensive with his title, and restricted to the premises granted by it. *Sydnor v. Palmer,* 29 Wis. 252; *Graeven v. Dieves,* 68 Wis. 317; *Fairfield v.*

*Barrette*, 73 Wis. 468. The instructions of the circuit court on the question of adverse possession were as favorable to the defendant as the law would justify, and the jury were properly instructed that, " whether the defendant's possession was adverse depended upon the *quo animo* with which he entered upon the land; whether it was to hold it adversely, or whether it was merely tentative or provisional, depending upon where the true line should be afterwards ascertained to be." Whether the entry of defendant, and his continued possession, were an ouster of the plaintiff and his grantor, or were merely in subordination to the plaintiff, or permissive, was a question of fact for the jury. *Hacker v. Horlemus*, 74 Wis. 25. It is to be remembered that the facts relied on by the defendant to make out an adverse possession are in a great degree equivocal, owing to the condition of the country and the entire want of any information in relation to the location of the center of section 10, and of the true line between the tracts in question; and there is no claim of any knowledge under the survey of the road by Reddan, which was much less than twenty years before this action was commenced; and there is an entire absence of testimony tending to show that the defendant's possession of the strip was in fact adverse to Brown, the plaintiff's grantor, who conveyed to the latter about fifteen years before the suit. There was testimony also that the plaintiff and defendant had often talked of having a survey made, to ascertain where the line was; but this was denied by the defendant. Such survey was in fact made in 1889, and it appears to have proceeded upon unquestioned data, and the defendant acquiesced in it so far as to build ten rods of fence on the north part of the line at a point where his cultivation of the strip on plaintiff's land was widest, and he suffered the plaintiff without objection, so far as appears, to build a new fence for forty rods on the south end of the line established by the survey.

Ayers vs. Reidel.

But for the irritation and temper growing out of a petty suit about some grass cut on this strip in the summer of 1890, it is possible, and perhaps probable, the surveyed line would have been acquiesced in as final. While it is true that, if the defendant had acquired title to the strip in question by adverse possession prior to the survey in 1889, he would not have lost it by any of his subsequent parol declarations or acts, yet his acts in conforming to or acquiescing in that survey were competent evidence upon the intent with which he had occupied, and as tending to show that his possession had been provisional or permissive, and not adverse. The jury, in view of all the facts and circumstances, might well say that the old fence was not intended as a permanent boundary, but was built and maintained as a matter of convenience until the true line should be ascertained, and that the defendant's possession of the strip in question had not been adverse for twenty years before the suit was commenced. While possession, occupation, and improvements for several years, with the knowledge of the true owner, may be *prima facie* evidence of adverse possession, yet they are not conclusive, and may be explained and rebutted by proof of facts showing that the possession was not in fact adverse ( *Worcester v. Lord*, 56 Me. 265; *Dow v. McKenney*, 64 Me. 138; *Lamb v. Coe*, 15 Wend. 642); that it was permissive or provisional, and without the intention in fact of claiming or acquiring title.

There is no room for contending that there was any express agreement between the parties whereby the old rail fence was built for and was to be a boundary between the estates. The most that can fairly be claimed is that what occurred in view of the lapse of time tended to show as an inference that there was such agreement, and that the fence had become a settled boundary by acquiescence. This question, like that of adverse possession, was one of fact for the jury, and it was left to them under instructions

free from objection. The verdict of the jury is supported by the evidence. There is no preponderance of evidence against it, and the motion for a new trial was properly denied.

3. It is objected that the description of the land in the complaint is fatally uncertain and defective. The description that it is "all of the described forty lying west of the east line thereof, and east of a fence from two to five rods west of the true east line, and which fence runs north and south," is sufficient. It is sufficient if, by the aid of a competent surveyor and persons knowing the monuments or objects mentioned as boundaries, the lands can be found; and this is in accordance with *Orton v. Noonan*, 18 Wis. 447.

It follows that the judgment of the circuit court must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.