BATZ, Appellant, vs. WOERPEL, Respondent.

*January 31—March 11, 1902.*

*Limitation of actions: Adverse possession: Fences: Evidence: Intention: "Actual occupation and possession." Inclosure.*

1. Where a fence built by defendant's grantors has been maintained for over sixteen years, the removal of parts of the fence, leaving some of the old posts and boards standing, is not evidence of an intention to abandon possession of any lands bounded by such fence.

2. Sec. 4213, Stats. 1898, provides that when there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not founded on any written instrument, judgment, or decree, the premises so actually occupied, and no other, shall be deemed to be held adversely; and sec. 4214, provides that, for the purpose of constituting adverse possession under the preceding section, land shall be deemed to have been possessed and occupied only: (1) when protected by a substantial inclosure, (2) when it has been usually cultivated or improved. *Held*, that the inclosure, cultivation, and improvement so mentioned in the statute are, at most, evidence of the possession and occupancy required by sec. 4213, and do not exclude actual occupancy and possession without such inclosure, cultivation, and improvement.

3. A vendee of the southern portion of a strip of land built a house which extended about eighteen inches over his north line. Thereafter the vendor set stakes for the vendee to build a fence on the vendee's north line, the stakes and fence built according thereto being ten feet north of vendee's line as described in his deed. Plaintiff purchased the balance of vendor's land, and the south line as described in plaintiff's deed would be ten feet south of said fence. The fence stood undisturbed for sixteen years after it was built, when defendant, having succeeded to the title of the original vendee, removed parts, leaving some of the old posts standing, two of which remained until the action was tried. The original vendee and his successors in title, including defendant, had used the land, so marked off by said fence, as a way of ingress and egress to and from the back door of the house, for more than twenty years. *Held*, that defendant had title to the ten-foot strip south of the fence by adverse possession.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This action was commenced in justice's court August 4, 1900, to recover $25 damages for trespassing upon the plaintiff's land, described, and mutilating a shade tree thereon, July 10, 1900. The defendant, by way of answer, pleaded title to the *locus in quo,* tracing his title by mesne conveyances from Henry Gilman, who owned the same May 4, 1870, and alleged that the defendant, his predecessors and grantors, held and possessed the *locus in quo* for more than twenty years adversely to any other claim, and were in open and notorious possession of the premises where the wrongful acts were alleged to have been committed under claim of title in fee, exclusive of any other right, and denied all other allegations in the complaint not therein specifically admitted or otherwise answered.

The cause having been certified to the circuit court, and a jury waived, it was there tried; and upon such trial it appeared from the undisputed evidence, and was in effect found by the court, that May 4, 1870, Henry Gilman was the owner in fee simple and in possession of a strip of land on the east side of lot 4 in block 12 in the village of Sun Prairie, being twenty rods long north and south, and five rods wide east and west, and bounded on the north by Main street, on the east by Railroad street, and on the south by an alley thirty-three feet in width, and on the west by the balance of said lot 4; that on that day Henry Gilman and wife conveyed to Sterner & Lampson a piece of land off the south end of that strip, extending four rods north of the north line of the alley, and five rods west of the west line of Railroad street, and that Sterner & Lampson immediately took possession and built a dwelling house thereon, which extended a short distance north of the north line of the lot so conveyed to them; that in August, 1870, Sterner & Lampson, being desirous of building a fence on the north line of their lot so con-

veyed to them, consulted with Henry Gilman, who then
owned the balance of the strip, in respect to the same, and,
after Henry Gilman had set the stakes where such fence
should be built, Sterner & Lampson built the fence on the
line so staked out by Henry Gilman, and that, as a matter
of fact, the line so staked out by Henry Gilman, and the
fence so constructed thereon, was from eight to ten feet
north of the north line of the lot so conveyed to Sterner &
Lampson; that Sterner & Lampson went into the possession of
all the lands south of such fence in August, 1870; that No-
vember 26, 1870, Lampson sold and conveyed his undivided
one-half of said lot to Sterner, who took the exclusive posses-
sion of said lot and all that part of said strip south of the
division fence so constructed, with the knowledge and con-
sent of Henry Gilman; that September 17, 1873, the title
and possession of all of said strip south of said fence passed
by deed of conveyance and delivery from Henry Sterner and
wife to Nicholas Bisch; that May 19, 1879, such title and
possession of all of said strip south of said fence passed by
deed of conveyance and delivery from Nicholas Bisch to
Michael Starker; that October 6, 1885, such title and posses-
sion of all of said strip south of said fence passed by deed of
conveyance and delivery from Michael Starker and wife to
the defendant herein; that each of such deeds and convey-
ances contained substantially the same description as the deed
from Henry Gilman to Sterner & Lampson, and the fence
during all of those years remained at the place and on the
line so staked out and located by Henry Gilman in 1870;
that, by reason of the dilapidation of the fence, the defendant
removed the same, except the posts, in 1886, and two of the
posts originally set remained at the time of the trial of this
action; that, during all of those years from 1870 until after
the defendant went into possession, he and his grantors used
and occupied the ground near the entrance of the house at
the door on the north side of the house for an entrance and

passageway to the house; that February 15, 1886, Henry
Gilman made a deed of conveyance to the plaintiff of the bal-
ance of said strip of land, the same being described therein
as five rods wide and sixteen rods long, and bounded as indi-
cated, and which description in fact extended from eight to
ten feet south of said fence. The court also found, upon evi-
dence more or less in dispute, that the defendant continued in
the use and occupation of the house and ground on the north
side of the house, being the strip in question, and not included
in the description in the recorded deed to the defendant and
his grantors, nor in any of the deeds to and from his grantors
back to the time of Henry Gilman, which use and occupation
was continued by the defendant up to about the year 1893;
that after the removal of the fence as aforesaid by the defend-
ant, and from about 1887 and 1888, the tenant and repre-
sentative of the plaintiff used and occupied a small part of the
strip in dispute, not included in the deed to the defendant,
for the purpose of passing over the same, but that the defend-
ant also at the same time used the said strip, and never gave
up or parted with the actual use and possession of the same;
that some time in the summer of 1893 the plaintiff, under
claim of being the owner of said strip, constructed a barb-wire
fence upon said disputed strip, not included in said deed to
the defendant, which fence was located about eighteen inches
north of the house of the defendant, and about from six to
eight feet upon the east end south of the original fence, the
post of which is still standing near the sidewalk, and which
post is a few inches north and east of the center of a certain
elm tree which is upon the strip of land, and wholly excluded
the defendant from all of the strip of land north of the barb-
wire fence; that up to the time of the construction of the barb-
wire fence there was a strip in the neighborhood of four feet
north of the house that had been used exclusively by the de-
fendant and his grantors as a passage and as a footpath; that
July 10, 1900, the defendant went upon the strip of land and

cut off certain limbs of the elm tree, the body of which tree is located south of the original fence, and upon the strip in question; that most of the limbs so cut off by the defendant extended over the strip in question and over the house of the defendant, and were incumbering the same, and were injuring the roof of the house, and preventing the proper use of the chimney of the same, which limbs so cut off were projecting over and upon the strip of land which had been occupied by the defendant and his grantors for ingress and egress to and from his house in question; that one limb cut by the defendant was a branch of a broken limb on the south side of the tree, and was cut at a place about four feet north of the barbwire fence.

And as conclusions of law the court found, in effect, among other things, that all the land south of the said line so staked out and located by Henry Gilman and Sterner & Lampson as the north line of the premises conveyed by Henry Gilman to them has ever since May 15, 1870, been held adversely to the said Henry Gilman and to all his grantors up to the time of the building of the barb-wire fence by the plaintiff; that the cutting of said limbs of the elm tree by the defendant was not a trespass on the part of the defendant, but that, on the other hand, the plaintiff, in erecting and maintaining the barb-wire fence south of the original fence, as found, was a trespasser at the time he so erected the fence, and is still a trespasser with respect to maintaining the same; that the defendant was entitled to judgment dismissing this action, together with costs,—and ordered judgment accordingly. From the judgment so entered, the plaintiff brings this appeal.

For the appellant there were briefs by *Gilbert & Jackson,* attorneys, and *Olin & Butler,* of counsel, and oral argument by *F. L. Gilbert* and *H. L. Butler.*

For the respondent there was a brief by *Tenney, Hall & Tenney,* and oral argument by *F. W. Hall.*

CASSODAY, C. J.   The finding to the effect that the barb-wire fence was constructed by the plaintiff in the summer of 1893 is not sustained by the evidence.   On the contrary, the plaintiff's son-in-law, Mr. Ruth, testified to the effect that he assisted in constructing that barb-wire fence in 1891, and that from 1888 to that time his garden came right up to where the barb-wire was then located; that he did not know that there was any dispute for a long while, but had known it since August, 1900; that there was no fence to hinder the defendant from going in and out of his side door on the north of his house until he put the garden there.   The defendant testified to the effect that Mr. Ruth had no garden down in the corner near the house before he built the barb-wire fence in 1891; that Mr. Ruth made no use of the strip south of the posts; that some part of it was idle at the time of the trial; that before the barb-wire fence was constructed the defendant's walk leading to the side door on the north side of his house was not interfered with; that he used six or seven feet of space before the fence was put there.   The defendant's testimony is corroborated in some respects.   Mr. Ruth concedes that when he went upon the premises there were a few posts and boards remaining of the old fence, and that the same were in line with the center of the tree, although he never measured it.

After careful consideration, we are constrained to hold that the disputed facts so found by the trial court are sustained by the evidence, except as to the time of constructing the barb-wire fence.   That, however, is immaterial, since it appears from the undisputed evidence that the fence was not placed there until more than twenty years after the defendant's grantors, Sterner & Lampson, constructed the old fence on the line staked out by the plaintiff's grantor.   It appears from such findings and the evidence that from the time of constructing that old fence, in August, 1870, down to the time of constructing the barb-wire fence, in 1891, the defendant

and his several grantors were in the possession and occupancy of all the land south of the line of that old fence. In fact, such possession and occupancy do not appear to have been disputed until about the time of the construction of the barbwire fence. Such possession and occupancy during the whole twenty years were, from the very situation of the premises and the residence of the defendant, open, notorious, and continuous. True, that fence became dilapidated to such an extent that the defendant removed a part of it in 1886, but he left some of the old posts and some boards standing, as an indication of what the defendant then regarded the north line of his lot. Such removal of a part of the old fence was no evidence of an intention to abandon possession of any of the land south of that fence, but, rather, indicates that he regarded himself as having some interest in and control over that fence.

The question recurs whether such possession and occupancy of all the land south of the line of that old fence by the defendant and his grantors for twenty years constituted adverse possession, within the meaning of the statute which declares that "when there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not founded upon any written instrument or any judgment or decree, the premises so actually occupied, and no other, shall be deemed to be held adversely." Sec. 4213, Stats. 1898. The statute further declares that, "for the purpose of constituting adverse possession" under that section, "land shall be deemed to have been possessed and occupied in the following cases only: (1) When it has been protected by a substantial inclosure. (2) When it has been usually cultivated or improved." Sec. 4214, Stats. 1898. The contention is that, after the old fence became dilapidated and mostly removed, the defendant's possession and occupancy of the land south of the line of that fence were not "protected by a substantial inclosure," within the meaning of that statute, nor

"usually cultivated or improved," within the meaning of that statute. Such contention would have much force if the defendant relied entirely upon such inclosure or such cultivation or improvement to establish his possession and occupancy. But he does not. On the contrary, he relies upon open, notorious, continuous, use and occupancy during the whole of the twenty years. As indicated, the defendant's house extended eighteen inches north of the north line of the land described in his deed. His back door opened upon the north side of his house, and his walk from that door necessarily extended over the land now in dispute in an easterly direction to the street. From the very nature of things, that walk was in continuous use of the occupants of the house during the whole of the twenty years. It was exclusively for the use of persons going to and from the house. The balance of the land now in dispute constituted a part of the defendant's front door yard. Its northern limit was naturally suggested by the remains of the old fence which had existed for sixteen years. The inclosure, cultivation, and improvement so mentioned in the statute are, at most, evidence of such possession and occupancy. Undoubtedly there can be actual occupancy and possession without such inclosure, cultivation, or improvement. A walk or a driveway is a good illustration. Certainly such open, notorious, and continuous use for twenty years without objection is *prima facie* evidence of adverse possession. *Wilkins v. Nicolai,* 99 Wis. 178; *Wollman v. Ruehle,* 100 Wis. 31; *S. C.* 104 Wis. 603; *Meyer v. Hope,* 101 Wis. 123; *Bishop v. Bleyer,* 105 Wis. 330; *Roberts v. Von Briesen,* 107 Wis. 486. After twenty years of peaceable and uninterrupted adverse possession, a grant will be presumed. *Nelson v. Jacobs,* 99 Wis. 559. The construction of the two sections of the statute mentioned has recently been considered by this court. *Illinois S. Co. v. Bilot,* 109 Wis. 418, 440–447. It is unnecessary to add to the authorities there cited and the

reasons there given by Mr. Justice MARSHALL. Among other things, it is there said:

"No particular kind of inclosure is requisite. It may be artificial in part and natural in part. Nor is any particular kind of improvement required, so long as it satisfies what is usual under the circumstances, and indicates clearly the boundaries of the adverse occupancy. . . . The boundaries may be artificial in part and natural in part, if the circumstances are such as to clearly indicate that the inclosure, partly artificial and partly natural, marks the boundaries of the adverse occupancy. . . . The term 'improvement in the usual way,' as used in the statute, means put to the exclusive use of the occupant, as the true owner might in the usual course of events. That use may be, as it often is, one that adds nothing to the value of the premises. It may even destroy the natural and actual value,—as, for instance, a highway may be acquired by twenty years' uninterrupted adverse use. . . . The governing questions of law, regardless of the character of the premises, are the same in every case; but the question of fact may be presented by evidence in such a great variety of ways, according to the circumstances of each particular case, that usually there is room for conflicting inferences, requiring the verdict of a jury as to where the truth lies."

He then quotes approvingly the language of the supreme court of the United States as follows:

"To constitute an adverse possession, there need not be a fence, building, or other improvement; and it suffices for the purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by statute. So much depends upon the nature and situation of the property, the uses to which it can be applied or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule in all cases. But it may safely be said that where acts of ownership have been done upon the land, which from their nature indicate a notorious claim of property in it, and are continued sufficiently long, with the knowledge of an adverse claimant, without interruption or an adverse entry by him, such acts are evidence of an ouster of a former owner, and an actual adverse possession

against him, provided the jury shall think that the property was not susceptible of a more strict or definite possession than had been so taken and held."

We must hold that the plaintiff's claim of title to the *locus in quo* was barred by the statute of limitations before the commencement of this action. This makes it unnecessary to consider the other question discussed by counsel.

*By the Court.*—The judgment of the circuit court is affirmed.