OFF, Guardian, and another, Appellants, vs. HEINRICHS, Respondent.

*February 23—March 14, 1905.*

*Ejectment: Description of land: Error in courses and distances:
Fence as boundary: Adverse possession.*

1. The description of land in a complaint in ejectment is sufficient
   if, by the aid of a surveyor and persons knowing the monu-
   ments and boundaries mentioned, the land can be found.  A
   description designating the south boundary of the tract in ques-
   tion as the north boundary of one B.'s land is *held* sufficient,
   where the evidence and the finding of the court definitely es-
   tablished the exact location of such boundary.
2. According to the courses and distances in two conveyances by the
   same grantor to different grantees, there remained a strip be-
   tween the two tracts conveyed, but one deed described the tract
   thereby conveyed as bounded on the south by the other tract,
   and the other deed referred to a corner of the first tract as being
   on the north boundary line of the second.  There was a rail
   fence upon what was understood to be the line between the
   tracts, but in fact this was at one end about ten feet and at the
   other about eighteen feet south of the north line of the south-
   ern tract as described by courses and distances.  The grantees
   and those claiming under them respectively occupied up to
   this line uninterruptedly and without dispute for more than
   twenty years, and during that time built a new division fence
   on such line, each building one half thereof.  *Held*, that this
   established title by adverse possession up to said line in the
   owners of the northern tract.
3. After the title was so established, L., the owner of the northern
   tract, conveyed by the same description as in the original deed
   of that tract, and a plat was made and recorded, which, as to
   its south boundary, was in accordance with the courses and
   distances in said description, leaving a strip between such plat
   and the old fence line.  Afterwards the southern part of the
   tract was reconveyed to L. by deed designating the southern
   boundary as the north line of the southern tract, the same as
   in the original deed—and L. thereupon resumed possession and
   occupancy up to the old fence line.  *Held*, that the title up to
   such old fence line thereby became revested in L., although in
   the meantime the owner of the southern tract had recorded a
   plat, making the north line thereof the same as the south line
   of the plat above mentioned.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This is an action of ejectment against *H. W. Heinrichs* to recover possession of land described in the complaint as follows: A strip of land off of the south side of the following described real estate: Said strip is about eighteen (18) feet wide at the easterly end, sixteen (16) feet wide at the middle point, and about ten feet (10) wide at the westerly point, to wit: The south seven and one-half acres of land off of the sixteen acres of land, more or less, in lot two (2), in section twenty-eight (28), town eight (8), range twenty-two (22) east, in Milwaukee county, Wisconsin, bounded by a line beginning in the section line between sections 28 and 29, twenty-six and two-thirds rods from the southwest corner of said lot two (2); running thence east one hundred rods (100), more or less, to low-water mark of Lake Michigan; thence on said line back to the place of beginning; thence north twenty-six and two-thirds rods to a post; thence east one hundred rods (100), more or less, to low-water mark of Lake Michigan; being the land formerly bounded on the south by Becker's and north by Steffen's land, in Milwaukee county, Wisconsin.

The answer is, in effect, a general denial. Both parties claim title through divers mesne conveyances from one Thomas Severn.

April 1, 1867, Thomas Severn conveyed by deed to August Loennecker the following described land: Part of lot two (2) in fractional section twenty-eight (28), town eight (8), range twenty-two (22) east, bounded as follows, viz.: Beginning at a post in the section line dividing sections twenty-eight (28) and twenty-nine (29), distant twenty-six and two-thirds (26⅔) rods from the southwest corner of said lot two (2); thence east one hundred (100) rods to low-water mark on Lake Michigan; thence back by the same to the place of beginning; thence north twenty-six and two-thirds (26⅔) rods to a post; thence east one hundred (100) rods to low-water

mark on Lake Michigan, containing sixteen (16) acres, more
or less; and being also bounded on the south by August
Becker's land, on the north by one Steffen's land, on the east
by Lake Michigan, and on the west by Jacob Rader's land.
On or before June 24, 1891, by descent and by divers mesne
conveyances, the title conveyed by said deed from Severn to
Loennecker became and was vested in Johanna Loennecker,
and the plaintiffs derive their title through her.

On October 5, 1867, said Thomas Severn conveyed to
August Becker the following land: Beginning at the southwest
corner of lot two (2) of fractional section twenty-eight (28),
in town eight (8) north, of range twenty-two (22) east; run-
ning thence east ten (10) chains to a point, a corner of Fred-
erick Gram's land; thence by the same north three and four-
hundredths (3.04) chains to a point; thence by the same east
sixteen and fifty-hundredths (16.50) chains to low-water mark
of Lake Michigan; thence back by the same course to the place
of beginning; thence north six and thirty-hundredths (6.30)
chains to a point, a corner of August Loennecker's land;
thence by the same east twenty-five and eighty-hundredths
(25.80) chains to low-water mark of Lake Michigan, con-
taining ten acres, be the same more or less, county of Milwau-
kee, Wisconsin.

It appears from the evidence that a rail fence was built
some time before 1867 upon what was understood to be the
line between the tracts conveyed to August Loennecker and
August Becker, above described. It would also appear, from
the call in the deed to August Loennecker for the south bound-
ary as August Becker's land, that Becker must have been in
possession prior to the time he received his deed, as his deed
appears to have been executed in October, while the deed to
Loennecker was in April, 1867. However, it is undisputed
that the rail fence existed between the two tracts in 1867, and
that August Loennecker and those claiming title through him
continued to occupy up to this fence; that the fence was rec-

ognized as the dividing line between the property of Loen-
necker and Becker, and in 1875 a new fence was built, by
agreement between the parties, each building one half, upon
the same line as the old rail fence. This occupancy by the
Loenneckers under claim of title continued until 1891, at
which time Johanna Loennecker executed a land contract to
one Gether, and afterwards, in 1892, conveyed to him, by
deed, the property, same description as in deed from Severn
to Loennecker. Afterwards, on January 29, 1892, one Will-
iam J. Kaul as president, and C. R. Gether as secretary, of
a corporation known as North Lawndale Company, acknowl-
edged a plat of a tract of land called "Glen Owen Plat," em-
bracing part of the lands described in land contract from
Loennecker to Gether, together with other lands, the south
boundary of Glen Owen being 440 feet north of the south-
west corner of lot 2. On the 2d day of March, 1892, C. R.
Gether and wife conveyed to the North Lawndale Company
the land in question, together with other land. April 29,
1895, the North Lawndale Company conveyed to said Gether
the south seven and one-half acres of the sixteen acres for-
merly conveyed by Johanna Loennecker to Gether. On the
same day said Gether and wife reconveyed to Johanna Loen-
necker said south seven and one-half acres, and she continued
to occupy the premises up to the old fence until her death in
1900. January 8, 1892, August Becker and wife sold by
land contract, or bond for deed, to C. D. Stanhope, the land
deeded to him by Severn. January 13, 1892, Stanhope ac
knowledged a plat of land called "Stanhope Subdivision No
Three," which plat shows the north boundary of land so
platted to be 440 feet north of and parallel to south line of
lot 2. January 9, 1893, Stanhope assigned an undivided
one-half interest in said land contract to C. R. Gether, and
on January 10, 1893, August Becker and wife conveyed by
deed to Stanhope and Gether the land described in the land
contract. August 31, 1896, Stanhope and wife conveyed to

Gether the land described in deed from Severn to Becker. August 31, 1896, Gether and wife reconveyed said land to August Becker. In 1900 Becker conveyed to defendant, and in 1901 defendant built a fence on a line ten feet north at the west end and eighteen feet north at the east end of the line of the old rail fence, and being on the north line of the description by courses and distances in deed from Severn to Becker. According to courses and distances given in deed from Severn to Becker, Becker's north line would be 415.8 feet north from the south line of lot 2, and the south line of the Loennecker tract 440 feet north of the south line of lot 2, leaving a strip of about twenty-five feet between the two tracts; but the old fence as the north boundary of the Becker tract was ten feet at west end, and eighteen feet at east end, farther south than the north line of the Becker tract, according to courses and distances specified in deed from Severn to Becker. This strip is the land in dispute in this action.

The action was tried by the court, and the findings of fact are substantially in accordance with the facts heretofore stated, except the court found that by the making and recording of Glen Owen plat, and the making and accepting of certain conveyances from the North Lawndale Company to Gether, and from Gether to Johanna Loennecker, Gether and Johanna Loennecker recognized as the true south boundary of the Loennecker land a line 440 feet north of and parallel to the south line of lot 2, being the south line of Glen Owen plat; and further found that the strip of land in suit was not included within the description in deed from Severn to Loennecker made in 1867, nor in deed from Johanna Loennecker to Gether made in 1892, nor within the description of the intervening or subsequent conveyances, but that said strip was included within the description in deed from Severn to Becker, and subsequent conveyances under which defendant claims, and that the plaintiffs and those under whom they claim had not held adverse possession of the strip of land in

suit for a period of twenty years continuously immediately preceding the commencement of this action. And the court found, as conclusions of law, that defendant was entitled to judgment. Judgment was thereafter rendered in favor of defendant, dismissing the complaint with costs, from which this appeal was taken.

*J. E. Wildish,* for the appellants.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Geo. Lines,* of counsel, and oral argument by *Mr. Lines.*

KERWIN, J. 1. It is claimed by respondent that the complaint is not sufficient for want of proper description of the land in suit, and that from the description, together with the evidence adduced on the trial, it is impossible to determine the south boundary of the strip described. The south boundary is designated as the north boundary of August Becker's land. The exact location of such boundary was in issue, and was claimed by appellants to be the line of the rail fence. The line of the rail fence was established on the trial, and found by the court to be a line ten feet south at the west end and eighteen feet south at the east end of the north line of Becker's tract according to courses and distances in deed from Severn to Becker. The proof settled definitely the exact location of the strip in suit, and the court found in its first finding the land in question to be "a strip of land extending from Richards street on the west to Lake Michigan on the east, said strip being about ten feet wide at the western end and eighteen feet wide at the eastern end, and lying between the fence built by the defendant in the year 1901 and a line south of said fence, on which line formerly stood a rail fence, and thereafter a board fence was built by August Loennecker and August Becker in or about the year 1875, and which said last-mentioned or southerly line is hereinafter called the 'old fence line.'" The fence on this "old fence line" existed in April,

1867, when the deed from Severn to Loennecker was executed, and which called for the Becker land as the south boundary of the Loennecker land, although the deed from Severn to Becker was not executed until October, 1867. The Becker tract and the Loennecker tract having been occupied by the respective owners up to this fence continuously from 1867 for upwards of twenty years, it is probable that the boundary referred to in the Loennecker deed was this fence line. *Nys v. Biemeret*, 44 Wis. 104. However, whether there was any uncertainty in the deed as to the boundary between the tracts, there is no uncertainty after trial and the findings of the court as to the exact location of the land described in the complaint, nor can there be any difficulty in putting the appellants in possession. The object of a definite description is for the purpose of enlightening the defendant as to the particular land claimed and to furnish information sufficient to enable the sheriff to put the plaintiff in possession. *Johnson v. Nevill*, 65 N. C. 677. However particular a description may be, it often requires evidence outside of the written description to enable the sheriff to apply such description to the parcel of land intended, and for this purpose he may satisfy himself of the identity of the land by witnesses or on the representations of the plaintiff (Sedgwick & W. Trial of Title to Land, § 459), the important question being that the sheriff be able to put plaintiff in possession of the land in suit. We think the description of the land in the complaint and finding is sufficient. The only point of confusion concerning the description is the south boundary of the Loennecker tract. This boundary is established as the line of the rail fence, and the strip of land of which the respondent took possession, and which this suit was brought to recover, is definitely fixed in the finding, the southerly line thereof being located as the old fence line. A description is sufficient if, by the aid of a competent surveyor and persons knowing the monuments and boundaries mentioned in the complaint,

the land can be found. *Ayers v. Reidel,* 84 Wis. 276, 54 N. W. 588. There will be no difficulty in locating the land mentioned in the complaint and finding in this action with such aid.

2. It is undisputed that by the courses and distances in the deeds from the common grantor, Severn, to Loennecker and Becker, respectively, in 1867, there remained a strip of land about twenty-five feet wide between the two tracts; but, following the calls in deed to Loennecker for the south boundary as the Becker land, the north boundary of the Becker tract becomes the south boundary of the Loennecker tract. The line between the two tracts at the time of the conveyance to Loennecker was indicated by the rail fence, which was built prior to 1867. The parties occupied their respective lands on each side of this fence from 1867 to 1875, when they built a new fence upon the line of this rail fence, each building one half thereof, and thereafter continued to use and occupy their respective tracts up to this division fence. This use and occupation was continued by the respective parties and those claiming under them to 1891 uninterruptedly, and probably down to the time respondent took possession in 1901. The construction of the new fence in 1875 on the line of the old rail fence by the occupants on both sides shows that they must have then recognized this line as the division line, and very strongly tends to show that they so recognized it from the time of the execution of their respective deeds in 1867, and that the call in the Loennecker deed for Becker's land as the south boundary referred to this rail fence as the boundary. Moreover, the deed to Loennecker, some months before the deed to Becker, which gives the south boundary as Becker's land, must be deemed to refer to the rail fence then existing upon what was obviously understood to be the division line between the Becker and Loennecker tracts, and which thereafter continued to be recognized as the division line for a period of upwards of twenty years. Besides, the rail fence

appears to be the division line most consistent with the con-
veyances to both parties, since the line given by courses and
distances in deed to Becker brings the boundary line between
his land and Loennecker's about twenty-five feet south of the
line given by courses and distances in the Loennecker deed,
while the Loennecker deed calls for the Becker land as the
south boundary. The north line of the Becker tract accord-
ing to courses and distances given in deed is about twenty-five
feet south of the south line of the Loennecker tract as given
by courses and distances in deed to Loennecker, while the
deed to Becker calls for "a point, a corner of August Loen-
necker's land; thence by the same east twenty-five and eighty-
hundredths (25.80) chains to low-water mark of Lake Mich-
igan," as north boundary, so that, by courses and distances
given in both deeds, the boundary line is left uncertain. In
this condition of the description the rail fence existing at the
time of the execution of the deeds, and afterwards recognized
as the division fence, was doubtless regarded as the south
boundary of the Loennecker tract by the parties at the time
of the execution of deed to Loennecker. *Ayers v. Reidel,* 84
Wis. 276, 54 N. W. 588; *Nys v. Biemeret,* 44 Wis. 104;
*Madison v. Mayers,* 97 Wis. 399, 73 N. W. 43; *Marsh v.
Mitchell,* 25 Wis. 706. But whatever may have been the
south boundary as given by the deed to Loennecker, it is con-
sidered that possession and occupancy of the land by the par-
ties on both sides of the division line of the old rail fence un-
interruptedly and without dispute for more than twenty years
prior to 1901, when respondent took possession, establishes
right and title in Loennecker and those claiming under him
to the line of the old rail fence. The new fence built in 1875
continued as the division fence until 1894, when it practically
went out of existence by decay, only posts or parts of posts
remaining thereafter. Aside from the existence of the old
fence in 1867, when the deeds were made, and the building of
the new fence in 1875 as the division line, and the acquies-

cence by all parties interested in the respective tracts there-
after in such line as the division line to 1891 and later, we
also have the evidence of witnesses that the Loennecker tract
was occupied and cultivated by Loennecker and those claim-
ing under him to this division fence from 1868 or 1869, con-
tinuously and uninterruptedly, to 1891 and later. The occu-
pation and cultivation of the Loennecker tract up to this fence
is undisputed from 1875 to 1891, but it is claimed there is
no evidence of use and occupation prior to 1875. From a
careful examination of the record we are convinced that there
is ample evidence, practically undisputed, that for twenty
years prior to 1891 the Loenneckers used and occupied, under
claim of right, uninterruptedly and without objection, the
land described in the complaint." Upon well-settled princi-
ples, this use and occupation established the fact of adverse
possession and a perfect title to the land in suit. *Wilkins v.
Nicolai,* 99 Wis. 182, 74 N. W. 103; *Nelson v. Jacobs,* 99
Wis. 547, 75 N. W. 406; *Wollman v. Ruehle,* 104 Wis. 603,
80 N. W. 919; *Bishop v. Bleyer,* 105 Wis. 332, 81 N. W.
413; *Batz v. Woerpel,* 113 Wis. 442, 89 N. W. 516; *Illinois
S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402.
A perfect title having been acquired by adverse possession
prior to 1891, it is unnecessary to consider the argument of
respondent's counsel that the continuity of adverse possession
was interrupted in 1891.

3. It is further claimed by respondent that even if it be
conceded that adverse possession was acquired by the Loen-
neckers prior to the sale to Gether in 1891, and that the
recording of the Glen Owen plat did not amount to a recog-
nition of Stanhope's title, still the appellants are not entitled
to recover, because Mrs. Loennecker's title to the strip in ques-
tion passed to Gether by the sale of 1891, which was con-
summated by deed given in 1892, and was not reconveyed to
Mrs. Loennecker. It is undisputed that the Glen Owen plat
did not extend to the south line of the Loennecker tract, be-

cause, standing upon the description by courses and distances in deeds from Severn to Loennecker and Becker, respectively, the south line of Glen Owen plat would be about twenty-five feet north of the north line of the Becker tract, leaving a strip of about twenty-five feet between the south line of Glen Owen plat as recorded and the north line of the Becker tract as described by courses and distances in deed from Severn to Becker. There is no evidence whatever of any title in either Stanhope or Becker to this strip, although, when Stanhope recorded his plat in January, 1892, he allowed it to lap over this twenty-five-foot strip, making the north line thereof the south line of Glen Owen plat. Prior to this the Loenneckers had acquired a perfect title to this strip by adverse possession, and also to the strip in suit, the south line of which was the old line fence. It is probably true that title and possession to this strip passed by deed from Johanna Loennecker to Gether in 1892, and that after this conveyance Johanna Loennecker occupied as tenant of Gether. But it is also clear that the deed from Gether to Johanna Loennecker in 1895 conveyed title up to the old fence line. The deed, while it referred to the fact that the Loennecker property, or part of it, had been platted, distinctly gave the Becker property as the south boundary, and, the boundary between the Loennecker tract and the Becker tract having been settled and established by adverse possession prior to that time, there can be no doubt but that the call in the deed for the Becker land as the south boundary conveyed all the interest of Gether to the old fence line. And it further appears that the Loenneckers, after this conveyance from Gether, took possession and continued to occupy up to the old fence line until 1901, when respondent built his fence, so there can be no doubt but that the deed from Gether to Johanna Loennecker not only conveyed the strip in question, but it was so understood by the parties. The title and possession of Johanna Loennecker passed to appellants, and they were the owners and entitled to

possession at the time of the entry by the respondent. It follows, therefore, that the judgment of the court below should be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with directions to enter judgment for appellants in accordance with this opinion.